# Andrews *v.* Frierson, *et al.*

*Bill in Equity for Rescission of Contract for Fraud and to enjoin Action at Law.*

1. *Assignment of funds, what constitutes; draft; acceptance.*—An order drawn by one person upon another for the payment to a third person of a certain fund does not constitute an assignment of such fund until it is accepted.

2. *Rescission of contract for fraud; when bill has equity; adequate remedy at law.*—A bill alleged that A., complainant, desiring to sell a large amount of real and personal property at auction, conferred with G., an intimate and confidential friend, as to the employment of an auctioneer, and solicited G.'s aid and advice in procuring the auctioneer; that G. recommended one F. and brought about a conference between A. and F.

[Andrews v. Frierson *et al.*]

which resulted in F.'s being employed at a commission of five per cent; that G., after being called on by A. for his aid and advice, and before the employment of F., entered into a secret agreement with F. for a division of commissions, and in order to enable F. to get the employment, falsely and fraudulently represented to A. that he (G.) had seen other auctioneers and they had said 5 per cent was as low as they could make the sale for, and that he could not get the work done for less than that; that complainant relying on these representations, entered into the contract with F.; that in fact the auctioneers, whom G. had seen, had in no instance priced the work higher than two and a half per cent.; that said F. was not as capable an auctioneer as they were, and that his services were not really worth exceeding one and one-half per cent; that G., after the indebtedness from A. to F. accrued, procured from F. an order for one-half of said commissions, and had brought suit therefor at law and also sued F. and garnished A.; that F. had not brought suit against A.; that complainant, as soon as he learned of the falsity of said representations, informed F. that the contract was void by reason thereof and that he refused to be bound by it, but that he was willing to pay F. a reasonable amount for his services, which in the bill he offered to do. *Held*: that the bill against G. and F. for a rescission of said contract and an injunction of said actions at law was not wanting in equity and that complainant had no adequate legal remedy.

APPEAL from the Chancery Court of Chambers. Heard before the Hon. RICHARD B. KELLY.

The opinion sufficiently shows the facts.

OLIVER & THIGPEN, for appellant, cited 14 Am. & Eng. Ency. Law (2d ed.), pp. 112, 122, 155, 887; *Waddell v. Lanier*, 62 Ala. 347; Fetter's Equity, 15-18, 146-8; 1 Story's Eq. (6th ed.), § 307, *et seq.; Baker v. Maxwell*, 90 Ala. 435; *Henry v. Allen*, 93 Ala. 197; *Merritt v. Ehrman*, 116 Ala. 278; *Jones v. Kolisenski*, 11 Ala. 607; *Pinkston v. Boykin*, 130 Ala. 483; *Jones v. Hardy*, 127 Ala. 221.

ROBINSON & DUKE, *contra*, cited *Dickerson v. Lewis*, 34 Ala. 638; *Smith v. Cockrell*, 66 Ala. 77; *Russell v.*

[Andrews v. Frierson *et al.*]

*Little,* 28 Ala. 160; *Foster v. Johnson,* 70 Ala. 249; *Merritt v. Uhlman,* 116 Ala. 278; *Hagadon v. Campbell,* 24 Ala. 375; *Calhoun v. Whittle,* 56 Ala. 138.

HARALSON, J.—Gann brought suit in the circuit court of Chambers county, on the 12th December, 1900, against Andrews for $1,965.50, alleged to be one-half of the amount claimed by Frierson as due him, by contract with Andrews, for auction fees due by the former to the latter. It is not shown that Andrews and Gann ever had any contract between each other as to these fees; but the bill shows that after the alleged indebtedness from Andrews to Frierson accrued, the latter, on the 26th November, 1900, gave an order on Andrews for one-half of the commissions due him, Frierson, as per contract between himself and Andrews, and $25 addition, out of his, Frierson's, half of said commissions. But this draft was not an assignment of the fund drawn on Andrews until accepted by him, which was never done. To allow such a thing would be to "split up a single cause of action into many actions without the assent if his debtor."—*Sands v. Matthews,* 27 Ala. 399; *Mandeville v. Welch,* 5 Wheat. 286. On the averments of the bill, therefore, Gann shows no cause of action against Andrews, and the latter, if that were all in the case, would have in a court of law a complete and adequate defense against that action.

In addition to said suit against Andrews, Gann, on the same day, sued out an attachment from said circuit court against Frierson to recover the same sum he had sued Andrews for, and garnished Andrews as debtor to Frierson. Both of said suits are now pending, as shown in said circuit court. Freirson, so far as shown, has never sued Andrews to recover his alleged claim against him.

2. The bill alleges specific acts of fraud practiced upon complainant by Gann to induce him to enter into a contract with Frierson, such as that Andrews knew Gann intimately and sustained with him confidential and friendly relations; that complainant, who lived in Chambers county, Alabama, had a large amount of real

and personal property to be sold at auction,—which brought when sold over seventy-seven thousand dollars,—and desired to procure the services of a competent and skilled auctioneer to make the sale, and not knowing one in his part of the county, wrote to Gann, who lived in Atlanta, Georgia, for his advice and aid in procuring the services of such an auctioneer; that the latter replied tendering his assistance, and urging the importance of having a good one; that complainant afterwards, on Gann's invitation, visited Atlanta and called on Gann, at his office, who telephoned to Frierson to come around, which he did; that Frierson stated, that his commissions for selling was always five per cent on real and ten per cent on personal property, but that in this case he would make the price five per cent all the way through; that after Frierson departed, an agreement not having been reached, complainant remarked to Gann that Frierson's price seemed high, and Gann replied that he had seen other auctioneers and they had said five per cent was as low as they would make the sale for, and that complainant could not get the work done for less than that; that relying on what Gann told him, complainant made no attempt to see other auctioneers, and entered into the contract with Frierson to give him five per cent on the amount the property sold for; that Gann assured complainant that Frierson was a good auctioneer, of great experience and success, and would make his commissions ten times over, and that he could not get the work done at less than the price named. The bill further avers that these representations by Gann to complainant were false, and fraudulently made to him in pursuance of a conspiracy between Gann and Frierson to inveigle complainant into making said contract with Frierson; that Gann had seen other auctioneers, just a short time before, and none of them had priced said work higher than two and a half per cent, and he well knew that complainant could get a better auctioneer than Frierson to make said sale for less than one and a half per cent; that Frierson was not a good auctioneer and his services were not worth as much as the auctioneers whom Gann had seen a short

[Andrews v. Frierson *et al.*]

while before. It is further charged that at the time Gann made these false and fraudulent representations to complainant, Frierson had entered into a written contract with Gann whereby the former agreed to pay the latter one-half of whatever commissions they might induce complainants to pay Frierson, and Gann had pledged Frierson not to inform complainant of the existence of such agreement; that said Frierson was connected with said representations falsely made to complainant by Gann, and was privy thereto and knew of them; that they were made to complainant by Gann at the request of Frierson and in his interest, and he participated in the fraud so practiced upon complainant. It is further averred that as soon as he learned of the falsity of said representations, complainant informed said Frierson that said contract was void by reason thereof, and that he refused to be bound by it, but was willing to pay said Frierson a reasonable amount for his services in making said sale, which in the bill he offers to do, and, to that end, submits himself to the jurisdiction of the court, agreeing to pay whatever the court may ascertain and decree he ought to pay said Frierson; and he also offers and submits himself to the court to pay whatever, if anything, he may owe Gann.

The prayer of the bill is for a rescission and cancellation of complainant's said contract with Frierson; for an injunction against the prosecution of said suits at law; for an ascertainment of the amount that ought to be paid by complainant to said Frierson for his services in making said sale, and a decree directing how the same shall be paid, and for general relief. The chancellor, on the motion of defendants, dismissed the bill and dissolved the temporary injunction, on the ground that complainant had a complete and adequate remedy at law, and that there was no equity in the bill.

Frierson, as stated, has not sued complainant, and if complainant could successfully defend at law the suit brought against him in the circuit court by Gann, and the garnishment against him in the suit of Gann v. Frierson in that court, it is evident that in neither of these suits could he obtain a judgment which would be

a complete defense to a suit which may hereafter be
brought by Frierson against him arising out of his said
contract with the latter. Relief against said suits aris-
ing out of , but not based directly, on said contract, is
incidental to the relief here sought, which is for the re-
scission and cancellation of said contract. It is evident
that the powers of a court of law are not adequate for
the purposes sought.

As. to the power of a court of equity to rescind and
cancel written instruments, procured to be made by
fraud, it is well settled that its jurisdiction may be fully
exercised. The decisions of courts so holding, says
Story, "are founded on the true principles of equity
jurisprudence, which is not merely remedial but also
preventive of injustice. If an instrument ought not to
be used or enforced, it is against conscience for the
party holding it to retain it, since he can only retain it
for sinister purposes." The rule applies to deeds, nego-
tiable instruments or mere written agreements or con-
tracts, solemn or otherwise. As to an instrument of
the latter character, the same author observes, "While
it exists, it is always liable to be applied to improper
purposes, and it may be vexatiously litigated at a dis-
tance of time when the proper evidence to repel the
claim may have been lost or obscured, or when the other
party may be disabled from contesting its validity with
as much ability and force as he can contest it at the
present moment."—Story Eq. Juris., § 700; 1 Pom Eq.
J., 221; *Merritt v. Ehrman*, 116 Ala. 278; *Pinkston v.
Boykin*, 130 Ala. 483.

In this suit, with all the parties before it, the court
may proceed to settle all their troubles, give each party
his rights and quiet apprehension and liability to fur-
ther litigation arising out of said contract.

The court erred in the decree rendered, and it will be
reversed and the cause remanded.

Reversed and remanded.