# Andrews *v.* Frierson *et al.*

*Bill for Cancellation and Recision of a Contract and to Enjoin a Suit at Law on the Contract.*

[DECIDED NOV. 16, 1905, 39 So. REP. 512.]

1   *Appeal; Equity; Finding of Register; Weight.*—In a chancery suit when reference is ordered to the register "To ascertain what would be a reasonable compensation to pay respondent for services rendered under the contract which the bill seeks to have cancelled, and report his action, together with the evidence offered, to the next term of said court," the finding of the register, who had the witness before him, comes to this court, on appeal, attended by the same presumption of correctness that formerly waited on the finding of the chancellor on the fact; and under § 3826 of the Code of 1896, the finding of the register, although disallowed or modified by the chancellor, comes to this court with the presumption in favor of the correctness of his finding; and this court will, on appeal, not consider the finding of the chancellor as presumptively correct when it changes or modifies the finding of the register.

2.  *Evidence; Expert Opinion; Weight.*—In determining the value of an auctioneer's services the register is not bound to give credit to expert opinion evidence, though unimpeached, of the value of such services, but may on the whole case, as developed

[Andrews v. Frierson, *et al.*]

before him, determine for himself what would be a reasonable compensation for such services.

3   *Tender; Waiver; Interest.*—An administrator employed an auctioneer to sell the property belonging to the estate under a contract, which he afterwards found to be fraudulent, and sent his attorney to the auctioneer for the purpose of making a settlement, which attorney notified the auctioneer that the administrator would not abide by the contract and said to the auctioneer that he was willing to pay a reasonable sum for such service, whereupon the auctioneer replied that he would have to sue on the contract in the U. S. Court or words to that effect; *Held,* such facts were not equivalent to a tender in order to relieve the administrator from liability for interest.

APPEAL from Chambers Chancery Court.

Heard before Hon. RICHARD B. KELLY.

Bill by appellant against appellee for cancellation and recission of a contract and to enjoin a suit at law on said contract. From a decree of the chancellor modifying the register's report, the complainant prosecutes this appeal. The facts are sufficiently stated in the opinion.

OLIVER & THIGPEN, for appellant.—The equities of the case have been settled by a former judgment of this court. *Andrews v. Frierson, et al.,* 134 Ala. 626.   Under the code of 1896, § 3826, the finding of the register although disallowed or modified by the chancellor comes before the supreme court on appeal attended by the same presumption of correctness that waited on it before the chancellor, and his conclusions on questions of fact submitted to him are entitled to great weight.—*Pollard v. Mortgage Co.,* 132 Ala. 155; s. c. 139 Ala. 183; *Mahone v. Williams,* 39 Ala. 202; *Williams v. Norton,* 139 Ala 402; *Noble v. Gillian,* 33 So. 861.

Testimony of expert or professional witnesses, while of great importance, is not conclusive.—12 Am. & Eng. Ency. of Law, (2nd ed.), 487.

No interest should be allowed on the amount found to be the value of Frierson's services.   Frierson declined to accept a reasonable compensation and declared his purpose to sue on the contract.—*Root v. Johnson,* 99 Ala. 9.

J. J. ROBINSON and THOMAS D. SAMFORD, for appellee. The evidence in this case clearly establishes the fact, by

an overwhelming preponderance, that the price charged by Frierson was a reasonable and fair compensation for the work; and yet, if it were otherwise, "A contract made by a man of fair understanding will not be set aside simply because it was rash, improvident, or a hard bargain.—9 Ala. p. 662.

Courts lend a reluctant ear to parties who have been deceived in making contracts, when they made no inquiry and sought no information.—*Watts v. Burnett,* 56 Ala. 340.

If complainant had equal means of knowledge with defendant, or, by the exercise of reasonable diligence, he could have ascertained the truth, the contract is good. 90 Ala. p. 428; 88 Ala. p. 537; 66 Ala. p. 590; 112 Ala. p. 576.

There must not only be very strong evidence of fraud and undue influence over Andrews by Gann, but proof must be positive and clear that Frierson was a party to it, and knew of the fraud and undue influence.—85 Ala. p. 263.

The statements alleged in the bill to have been made by Gann to the effect that Andrews needed an auctioneer, and that Frierson could more than double the compensation agreed to be paid him, etc., even if true, were mere matters of opinion, made without any intention to deceive, and cannot be the basis of a charge of fraud to avoid a written contract.—Paysant v. Ware, 1 Ala. p. 168.

Such statements could not have been more than statements of facts equally open to both parties.

In order that equity may rescind a contract on the ground of undue influence, it must be clearly shown that the contract was executed at a time when the free agency of the party was so far destroyed that he would not have done so if left to himself.—1st Ed. Am. & Eng. Enc. of Law, Vol. 21, p. 36, and authorities there cited; 62 Ala. p. 347; 95 Ala. p. 579.

Respondents insist:

1. "That the solemn, written contract in this case should be sustained.

2. That whether the contract is or is not sustained, five per cent. is a reasonable compensation for the servi-

ces performed, according to the evidence as it appears in this case.

3. That respondents are entitled to interest from the time when the services were performed, at eight per cent.

4. That complainant should pay the costs of this suit.

DENSON, J.—Walter Andrews is the complainant in this bill against T. A. Frierson and R. M. Gann. Andrews was the administrator of the estate of J. E. Andrews, deceased. The estate consisted of a large quantity of real and personal property located in Chambers, Lee, and Tallapoosa counties, amounting in value to something near $76,000. In the month of October, 1900, Andrews obtained from the probate court of Chambers county an order to sell all the property of the estate of his said intestate. The sale and description of the property was extensively advertised, and was to begin on Saturday, November 17, 1900, at Lafayette, Ala., to continue through the following week at the various places in the counties where the property was located and to be concluded on Monday, November 26, 1900, at Opelika. Andrews went to Atlanta and there entered into a written contract with T. A. Frierson, an auctioneer, whereby he secured the services of Frierson as auctioneer to sell the property at the times and places advertised for a compensation of 5 per cent. on the gross amount of the sales made. Frierson performed the services under the contract, and the gross amount of the sales was $75,981.08 The bill was filed on the 5th day of January, 1901, and alleges, among other things, that Andrews was induced to make the contract through fraud practiced by Frierson and Gann; that before the contract was executed there existed between Frierson and Gann a secret agreement by which Gann, under cover of his confidential relations with Andrews, was to lead him to make the contract and they were to share what they could make out of him; and that the price they induced him to agree upon, 5 per cent. of the amount of sales, was extortionate and excessive. The bill alleges that the fraud was not discovered by Andrews until after the sale was made, and when he discovered it he refused to pay the amount named in the contract, but offered to pay a reasonable

amount. Gann brought suit at law against Andrews for one-half the amount named in the contract, and also sued Frierson for one-half the amount and garnished Andrews. The prayer of the bill is for a rescission and cancellation of the contract with Frierson, for injunction against the suit at law, for an ascertainment of the amount that ought to be paid Frierson for his services, for direction as to whom it should be paid, and for general relief. From a decree dismissing the bill for the want of equity and dissolving the injunction, the complainant prosecuted a former appeal to this court. On that appeal the bill was held to contain equity and the decree of the chancery court was reversed.—*Andrews v. Frierson,* 134 Ala. 626, 33 South. 6. We here refer to the case as reported for a more extended statement of the facts alleged in the bill and a better understanding of its purposes.

After the case was remanded, the respondents answered, the testimony was taken, and on submission of the cause on the pleadings and proof a decree was rendered by the chancellor, May 27, 1904, adjudging the complainant entitled to the relief sought and ordering a reference to the register to "ascertain what would be a reasonable compensation to pay to the respondent Frierson for the services rendered by respondents under the contract which the bill seeks to have canceled, and report his action, together with the evidence offered, to the next term of said court." The reference was held, and the only evidence submitted was the written evidence upon which the cause was previously submitted to the court for final decree. The register filed his report on July 11, 1904, in which he found and reported that 1 1-2 per cent. of the gross amount of sales ($1,139.71) would be a reasonable compensation. No interest was allowed or calculated by the register on the amount. The respondents excepted to the report of the register and on submission to th chancellor he, on October 21, 1904, rendered a final decree, in which, without setting aside the report, corrected it and fixed the rate of compensation at 3 per cent. of the gross amount of sales ($2,279.43), and allowed interest on this amount from November 26, 1900, making the total amount of compensation, inclu-

[Andrews v. Frierson, *et al.*]

sive of interest, $2,987.07. From this decree of the chancellor the complainant, Andrews, prosecuted this appeal.

The assignments of error are: "The court erred in not confirming the register's report. (2.) The court erred in correcting the register's report so as to fix the rate of compensation to which the respondent Frierson is entitled at 3 per cent. on the gross amount of said sales. (3) The court erred in allowing interest on the amount decreed to be paid."

The established rule is that when questions of the sort we have in hand are referred to a register, "and he is directed to draw a conclusion from evidence to be produced before him, every reasonable presumption is to be made in favor of his decision, and it will not be interfered with unless it is plainly wrong."—*Kinsey v. Kinsey*, 37 Ala. 397. Or, to state it in the language of WALKER, C. J.: "The rule is to indulge all reasonable presumptions in favor of the register's decision upon questions of fact, such as those now under consideration, and not to reverse it unless clearly satisfied that it is wrong." Judge STORY goes so far as to say "that the court must be clearly satisfied that there has been an unquestionable error."—*Mahone v. Williams*, 39 Ala. 202; *Jones v. White*, 112 Ala. 449, 20 Sotuh. 527. Or, as was said by the present Chief Justice, in respect of the rule, in *Speakman v. Burleson*, 123 Ala. 678, 27 South. 322, a case in which all the evidence submitted to the register and from which he drew his conclusion was in writing: "We have carefully read and considered all the evidence in the record, all of which and no other was before the register at reference. From it we can by no means affirm that the conclusion and report of the register is plainly and palpably incorrect and erroneous; and only such conclusion would justify us in reversing the decree confirming the report."—*Speakman v. Burleson*, 123 Ala. 678, 27 South. 322. See the authorities cited there. As was said by the court in *Pollard v. American Freehold Land Mortgage Company*, 139 Ala. 183, 35 South. 767: "Formerly the conclusion of the chancellor on all matters of fact brought with it to this court on appeal a prima facie presumption of correctness, which for the purpose of review here displaced the presumption of correctness which

[Andrews v. Frierson, *et al.*]

attended the register's finding before the chancellor, so that this court would affirm the decree sustaining exceptions to such finding, unless, after indulging the presumption, just referred to, of the correctness, it still appeared here to be erroneous. The statute now, however, provides that this court shall give no weight to the decision of the chancellor upon the facts (Code, § 3826) ; and from this it would seem to follow that such finding of the register, although it has been disallowed or modified by the chancellor, comes before us on appeal for original review, attended by the same presumption of correctness that waited on it before the chancellor, and that it should not be disturbed here unless, that presumption to the contrary notwithstanding, it appears to us to be clearly erroneous."

In this case we are considering, the duty imposed upon the register was to ascertain what would be a reasonable compensation to be paid Frierson for his serving as an auctioneer in making the sale. This was to be done, too, without any regard to the contract that had existed. The contract was annulled by the decree of the court. It was no longer of any efficacy. It will be observed, too, that the fact to be ascertained was dependent for establishment upon opinion evidence—opinion as to the value of services rendered. And, without intending any reflection on any witness whose evidence was taken in the case, we remark that it is always an easy matter to obtain evidence on either side of such a proposition when friendly experts are called to give opinions, as this case clearly demonstrates. Again, we note the great variation in the opinions of the experts who were called to express an opinion. The opinions as to value range from one-half of 1 per cent. to 5 per cent. This of itself illustrates the sensibleness of the rule laid down by the Supreme Court of the United States with respect of the manner in which the jury might deal with the opinions of witnesses in regard to value.—*The Conquerer*, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937. There it was said by the court, speaking through Mr. Justice BROWN, with regard to opinion evidence on the question of value: "While there are doubtless authorities holding that a jury (and in this class of cases the court acts as a jury) has no right

arbitrarily to ignore or discredit the testimony of unimpeached witnesses so far as they testify to facts, and that a willful disregard of such testimony will be ground for a new trial, no such obligation attaches to witnesses who testify merely to their opinion; and the jury may deal with it as they please, giving it credence or not as their own experience or general knowledge of the subject may dictate." And, although such testimony may be uncontroverted, the register may exercise his independent judgment.—*Forsyth v. Doolittle,* 120 U. S. 73, 7 Sup. Ct. 408, 30 L. Ed. 586; *Head v. Hargrave,* 105 U. S. 45, 26 L. Ed. 1028. In the case of *Pollard v. A. F. L. M. Co., supra,* one of the questions referred to the register to be determined was the value of services rendered by the attorneys. The only witness who testified as to the value of the services placed that value at $3,000, and the register found and reported it to be only $2,000. The report was confirmed in this respect, over the exceptions filed to it. Chief Justice McCLELLAN, for the court, said: "But this testimony was the mere estimates, opinion of the witnesses. Their judgment cannot be substituted for that of the register. He was not bound to find in accordance with their estimates." The court held that it was the power and duty of the register upon the whole case as developed before him to determine for himself what would be reasonable compensation to be allowed; citing *U. S. v. McGlue,* 1 Curt. 1, 9, Fed. Cas. No. 15, 679; *Forsyth v. Doolittle,* 120 U. S. 73, 77, 7 Sup. Ct. 408, 30 L. Ed. 586; *Rogers, Expert Testimony* § 207; *T. & C. R. Co. v. Danforth,* 112 Ala. 80, 93, 94, 20 South. 502. See, also, *A. G. S. R. Co. v. Hill,* 93 Ala. 514, 9 South. 722, 30 Am. St. Rep. 65; 17 Cyc. p. 131 (V), notes 79 and 80; *J. E. Co. v. Branham,* 145 Ind. 314, 41 N. E. 448, 33 L. R. A. 395; *Hull v. St. Louis,* 138 Mo. 618, 40 S. W. 89, 42 L. R. A. 753. The case last cited was an action for compensation for personal services rendered by plaintiff for the defendant in and about the appraisement of certain property which it held in trust. The amount sued for was $3,250. The amount for which plaintiff recovered a verdict was $1,188. The plaintiff moved for a new trial and appealed from a judgment overruling it. Plaintiff, at the time of his employment,

was a real estate agent in St. Louis. The time consumed in making the appraisement was 228 days. The plaintiff and 11 other witnesses testified in his behalf, and estimated the value of his services at $3,250, while 5 witnesses testified in behalf of defendant and estimated them at $1,000 to $1,200. The judgment of the court overruling the motion for a new trial was affirmed. The court held that "the evidence of the expert witnesses as to the value of the services sued for was merely advisory, the weight of it being for the determination of the jury.

The rule, then ,to be deduced from the authorities, would seem to be that, where the facts and circumstances attending the rendition of services and the nature of the services are developed by the evidence, opinions of witnesses as to value are not conclusive, but may be considered as advisory, and the register must use his own judgment, guided by the evidence and assisted by such opinions.—*Moore v. Ellis,* 89 Wis. 108, 61 N. W. 291; *Stevens v. Minneapolis,* 42 Minn. 136, 43 N. W. 842; *Laflin v. Chicago, W. & N. R. Co.* (C. C.) 33 Fed. 415; *Pollard v. A. F. L. M. Co., supra.* The nature of the services rendered, the circumstances under which they were rendered, and the time consumed, were all developed by evidence submitted to the register in this case. The testimony of the expert witnesses as to the value of the services of the defendant Frierson is conflicting. Six witnesses testified in behalf of the complainant. One of them estimated the value of the services at 2 1-2 per cent., one from a half to 1 per cent., two of them at 1 per cent., and two at 1 1-2 per cent. Eleven witnesses, including the respondents, testified in behalf of the respondents. All of them placed the value of the services at 5 per cent. One of them, Henry L. Wilson, placed it at 5 per cent. on the first $2.000 and 2 1-2 on the balance. At a previous time, when he was examined with respect to the value of the services rendered by Frierson, he placed the value at 1 1-2 per cent. on the gross amount of sales. Thus we have, from the variant evidence of the 17 witnesses examined in this case with respect to value, an illustration of the soundness of the rule. heretofore stated, that, where the facts and circumstances attending the rendition of services are developed by the evidence,

opinions of witnesses as to value are not conclusive, but may be regarded by the register as advisory—as aids to be employed by him in his endeavor to reach a correct conclusion. We have carefully read and re-read all the legal evidence that was submitted to the register, and, without going into further details of it, we think it hardly probable that any two minds would ever draw the same conclusion from it. As the result of our examination of the evidence we feel no full conviction that the register's conclusion as to the value of the services is wrong. His conclusion is not unreasonable, and we are constrained to hold that the chancellor's decree correcting the report with respect of the value of the services and increasing the value to 3 per cent. of the sales is erroneous.

The register in his report makes no mention of interest on the amount he ascertained and reported as reasonable compensation, although this matter was called to his attention. The respondents excepted to the report on this, among other grounds, and the chancellor decreed that respondents were entitled to interest from November 26, 1900, the day on which the sales were concluded. It is not claimed by the complainant that tender was ever made to Frierson of any amount; but complainant's insistence is that under the evidence he was excused from actual tender. We cannot give our assent that the insistence is well founded. The case of *Root v. Johnson,* 99 Ala. 90, 10 South. 293, cited by complainant's counsel holds that "when, before tender made, the party to whom money is due declares he will not receive it, or makes any declaration or demand which is equivalent to a refusal to accept the money if tendered, then actual tender is dispensed with." There can be no dispute about the correctness of this ruling, but the evidence in the case in hand does not bring it within the influence of the rule, even if it should be conceded that the averments in the bill are sufficient on the question of tender to relieve plaintiff from the payment of interest. The only evidence relied upon by complainant with reference to the question is the testimony of E. S. Thigpen. The substance of Thigpen's testimony was that he was employed by Andrews as one of his attorneys to go to At-

[Andrews v. Frierson, *et al.*]

lanta at the time and find out all he could about the contract between Andrews and Frierson. Andrews told him to do whatever he thought best under the circumstances. After a conversation by Thigpen and Frierson about the contract between Frierson and Gann with regard to the division of Frierson's commissions, Thigpen told Frierson that the contract between him and Andrews was void by reason of fraud, and that as attorney for Mr. Andrews he would notify him that Andrews refused to abide by said contract, but was willing to pay him what his services were reasonably worth. "Frierson said that he would have to sue on the contract in the United States court, or something to that effect." From this it would seem that Frierson's reply or declaration, relied upon to give immunity to complainant from actual tender, is left in doubt and uncertainty by the evidence. We do not think that by fair construction the evidence can be held to mean that Thigpen was, as Andrews' agent, ready and willing to pay a reasonable sum, even presuming that such a sum could have been agreed upon, or that he was about to produce such a sum and was prevented from doing so by the creditor declaring he would not receive, or that the declaration of Frierson was equivalent to a refusal to accept, the money if tendered, or that Thigpen offered to pay any sum of money whatever. In this unsatisfactory state of the proof we cannot hold that the complainant brought himself within the rule of exemption from tender, so as to abate payment of interest.—*Rudulph v. Wagner,* 36 Ala. 698; *Ashworth v. State,* 63 Ala. 120; *Park v. Wiley,* 67 Ala. 310; *Root v. Johnson, supra.*

The decree of the chancellor with respect to the amount of compensation fixed must be reversed, and a decree will be here rendered confirming the register's report, fixing the compensation at $1,139.70. This amount should bear interest at the rate of 8 per cent. per annum from November 26, 1900; and it will be so adjudged. The amount of compensation, including interest, being easy of calculation, is ascertained to be $1,595.58. A decree will therefore be rendered that the respondents in the bill (appellees here), T. A. Frierson and R. M. Gann, each have and recover of the complainant (ap-

[Blakey v. City Council of Montgomery.]

pellant here) $797.79. But the respondents (appellees) must pay the costs in the chancery court and of this appeal. It will also be adjudged that, unless the complainant pays the amount of this judgment, with interest to time of payment to the register, within 90 days from this day, then in that event, at the next term of the chancery court held thereafter, on motion of the respondents, the bill shall be dismissed, and the injunction dissolved.

Reversed and rendered.

HARALSON, DOWDELL, and SIMPSON, JJ., concur.