# Nashville C. & St. L. Ry. *v.* Bingham.

## *Killing Stock.*

(Decided April 17, 1913. 62 South. 111.)

1. *Railroads; Injury to Animal; Complaint.*—A complaint in an action for injury to animals which alleges that defendant negligently ran its train operated on its railroad in M. county, leading north from H., upon, over or against plaintiff's jack, was not demurrable for failing to more definitely designate the locality on defendant's track where the injury happened. ·

2. *Same; Damages; Value.*—As all domestic animals are presumed to have some value, a complaint against a railroad for killing or injuring such an animal or animals was not subject to demurrer for failing to allege that the animals were chattels of value.

3. *Same; Duty to Keep a Lookout.*—An engineer operating a train is required to keep only such constant and careful lookout for ani-

mals on the track as is consistent with his other duties in the operation of said train.

4. *Same; Evidence.*—The evidence examined and held to warrant a finding that defendant's engineer was guilty of negligence in so operating his engine as to strike plaintiff's jack.

5. *Same.*—The evidence of the engineer examined and it is held to authorize the jury to infer that the witness had no independent recollection as to the specific night of the injury, or as to what he was doing at the point and time of the accident, and that his evidence was based on the fact of his custom in the matter.

6. *Same; Instructions.*—In an action for injuries to a jack a charge asserting that it was the engineer's duty to keep a lookout for animals, and to use diligent effort to avoid injuring them when seen in peril on or near the track, cannot be said to be erroneous when taken in connection with an instruction that the engineer of a train is only required to keep such lookout ahead as is consistent with the discharge of his other duties, the two instructions being of equal dignity and entitled to be construed together.

7. *Same; Jury Question.*—The evidence examined and held to show such connection between the injury and one of defendant's trains, as to authorize a submission to the jury of the question as to what caused the injury.

8. *Evidence; Opinion.*—Where it was shown that the jack passed on to defendant's track through a burnt place in the fence on defendant's right of way, and that from that point, a distance of fifteen feet, there were no tracks to a place where the ground was mashed and scarred, from which latter point, tracks led to the pasture gate where plaintiff found his jack with a mashed shoulder, and that between the time plaintiff saw the jack uninjured in the pasture, and when he found him in his injured condition, but one train had passed which went south, the witness was properly permitted to testify that in his opinion the jack was struck by the train going in that direction.

9. *Appeal and Error; Review; Excessive Verdict.*—Where there was evidence that the jack injured was worth not less than $400, and the jennet not less than $200, a verdict awarding $400 for the two animals together with interest, which the trial court declined to set aside, will not be set aside on appeal as being excessive, notwithstanding the evidence for defendant indicated that the two animals were worth much less than such sum.

APPEAL from Madison Circuit Court.

Heard before Hon. A. H. ALSTON.

Action by W. H. Bingham against the Nashville, Chattanooga & St. Louis Railway for damages to stock. Judgment for plaintiff, and defendant appeals. Affirmed.

Count 1 is as follows: "Plaintiff claims of defendant the sum of $400 damages for this, that on, to wit, the 27th day of March, 1911, defendant negligently ran its engine and train of cars operated on its railroad in this county, leading north from Huntsville, upon, over, or against plaintiff's jack, wounding it and injuring it to such extent as to render it worthless and of no] value." The third count is like the first, except that it declares for the killing of a jennet.

SPRAGINS & SPEAKE, for appellant. Counts 1 and 3 were subject to the demurrer interposed in that they fail to state with sufficient definiteness the place of the injury. If there was any inference· from the evidence of footprints, the inference was just as strong that a train going north hit them as there was that they were hit by a train going south.—*L. & N. v. Landers,* 135 Ala. 504; *So. Ry. v. Bonner,* 141 Ala. 517; *S. C. & C. Co. v. Swinney,* 149 Ala. 405. An engineer's duty as to keeping a lookout is qualified by his other duties in the operation of his train, and the court erred in giving charge made the basis of the fifth assignment of error.—*E. T. V. & G. v. Bailey,* 77 Ala. 429. At the place where the animals were injured, the burden was not on defendant to disprove negligence.—*So. Ry. v. Smith,* 163 Ala. 174. On these authorities appellant insists that the affirmative charge should have been given for it, and that the court erred in overruling motion for a new trial.

BETTS & BETTS, for appellee. The complaint was not subject to the demurrers interposed.—*So. Ry. v. Hoge,* 141 Ala. 351; *C. of Ga. v. Thomas,* 1 Ala. App. 267; *Choat v. So. Ry.,* 119 Ala. 611. Under the circumstances and the evidence, plaintiff was properly permitted to express the opinion that the animals were hit by a cer-

tain train going south.—*Adler & Co. v. Pruitt,* 169 Ala. 213; *McVay v. State,* 100 Ala. 110; *Rollins v. State,* 136 Ala. 126; *Smith v. State,* 137 Ala. 22. There was no error in giving the charge requested for plaintiff.—*A. G. S. v. Boyd,* 124 Ala. 525; *K. C. M. & B. v. Childers,* 132 Ala. 612; *Anniston E. & G. Co. v. Hewett,* 139 Ala. 443; 152 Ala. 196. The evidence was sufficient to take to the jury the question as to how the injury happened, and whether or not defendant was responsible therefor. *S. & N. Ry. Co. v. Small,* 70 Ala. 499. The affirmative charge was properly refused as the jury might reasonably infer from the evidence a conclusion opposed to the direct testimony of defendant's witness.—119 Ala. 595; 143 Ala. 149; 152 Ala. 193.—*L. & N. v. Gentry,* 103 Ala. 635.

DE GRAFFENRIED, J.—This case was tried upon counts 1 and 3, and the reporter will set out those counts.

It is contended by appellant that the counts were demurrable because the place of the injury should have been stated with more definiteness and certainty than it is stated in said counts. Counts similar to those under discussion have been held by this court to be free from attack upon the stated ground of demurrer, and we see no reason why we should depart from those decisions.—*Southern Railway Co. v. Hoge,* 141 Ala. 351, 37 South. 439.

(1) All domestic animals are presumed to possess some value. Indeed, in ancient times, in the East, the wealth of a man was measured by the number of the various kinds of domestic animals and, possibly, by the number of slaves that he possessed. The said counts were not subject to demurrer because of the plaintiff's

failure to allege therein that the animals described in the counts were chattels of value.

(2) The plaintiff's evidence tended to show that he lived near, and had a pasture near, the railroad track of the defendant; that on the morning of March 28, 1911, he found his jack at his lot gate, suffering from a "big gash or mashed-inn place on his hip just to the left of his tail;" that he at once took the "back track" of the jack and "traced his footprints directly back to the railroad, to a mashed and scarred-up place on the ground," which "mashed and scarred-up place" was "right down by the culvert, by the side of the railroad"; that this "back track" of the jack led back from the lot gate of the plaintiff directly to the "mashed and scarred-up place on the ground" which was "right down by the culvert, by the side of the railroad" but that this "back track" went *no further* and did *not* lead *up to* or *onto* the *railroad track*. The evidence of the plaintiff further tended to show that other tracks of the jack showed that the jack *went out* of the pasture through a burned place in the pasture fence *onto the track* of the railroad at a point about *15 feet* north of the "mashed and scarred-up place" by the culvert by the side of the railroad, but that there were no tracks of the jack leading from the *pont where he went onto* the railroad track, to said "mashed and scarred-up place," or to any other point. There was, then, according to the evidence, a *gap, break,* or *hiatus* in the tracks of the jack for a distance of *15* feet. At one end of the gap, break, or hiatus the tracks of the jack showed that he was on the railroad track. At the other end of the hiatus was the "mashed and scarred-up place," *not on, but by, the culvert by the side of the railroad,* and, as the jack's tracks led away from the "mashed and scarred-up place" to the plaintiff's lot gate, and as the jack

was injured when the plaintiff found him at the lot gate, the jury had a right to conclude that the "mashed and scarred-up place" was made by the jack and that he was in some sort of trouble when he made "the mashed and scared-up place."

The question is: How did the jack get through the above gap, break, or hiatus of 15 feet *without making a track?*

A passenger train of the defendant, on the night the jack received his injuries, going *south,* passed the above two points. The jack was injured as above stated. Something struck him a severe blow in the rear, and we think that there was abundant evidence from which the jury had the right to conclude that the jack was knocked from the track to "the mashed and scared-up place" by a train of the defendant going *south.* In this way the gap, break, or hiatus in the tracks of the jack and the injuries suffered by the jack can be reasonably accounted for. As these conclusions were reasonable inferences to be drawn from the evidence, the question as to *what* caused the injuries to the jack was a question for the jury.

(3) The plaintiff was permitted to testify that, in his opinion, if his jack was struck by a passing train of the defendant, he was struck by a train going south. The defendant's track, at the point of injury, runs in a northern and southern direction. It is a physical impossibility for a train going south, if it strikes an animal in front of it, to knock that animal to a point 15 feet *north* of the point of contact. In addition to the above, the evidence shows without dispute that the only train which passed the point where it is claimed that the jack was injured, between the time when the plaintiff saw him uninjured in the pasture and the time when he found him in his injured condition, was a train *going*

*south.* No error can therefore be predicated upon the above ruling of the trial court.

(4) The trial court, at the written request of the plaintiff, gave to the jury the following written charge: "It is the duty of the engineer in charge of a train to keep a lookout for animals, and of using diligent effort to avoid an injury to them when seen in peril on or near the track."

It is not the *absolute, unqualified* duty of an engineer, *at all times,* to keep a lookout for animals. His *position* and the *law* require of him the performance of *other* duties besides that of keeping such a lookout. The law only requires the engineer to keep such constant and careful lookout for animals as is consistent with the discharge of his other duties as such engineer. If an engineer fails to perform the constant care and watchfulness for animals which, consistent with his other duties, the law requires of him, he is guilty of negligence. Of course, an engineer owes no duty to keep a lookout for animals which are not on or dangerously near his track, for, as to such animals, no injury can be reasonably anticipated from the operation of the train. We can, however, see no difference in principle, in cases like the present, between an instruction by a trial judge to a jury that (a) "it is the duty of an engineer, when consistent with the performance of his other duties, to keep a constant and steady lookout for animals and to use diligent effort to avoid injury to them when seen in peril on or near the track," and an instruction that (b) "it is the duty of an engineer, when consistent with the performance of his other duties, to keep a constant and steady lookout for animals on or in dangerous proximity to the track and to use diligent effort to avoid injury to them when seen in peril on or near track." Both instructions mean the same thing. Both convey the

same thought, and language is but the instrument which conveys the thought of one mind to other minds.

It is contended by appellant that the charge which the court gave to the jury in the instant case, and which we have set out, in hæc verba, at the head of this subdivision (4) of the opinion, violated the above well-known principles in that the charge casts the absolute, unqualified, duty upon the engineer, *at all times,* and as to that matter, *at all places,* to "keep a lookout for animals." The trial court, however, at the written request of the defendant, gave the following other written charge to the jury: "The engineer of a train is only required to keep such a lookout ahead as is consistent with the discharge of his other duties."

The above two written charges were of equal dignity, they were in the hands of the jury and were considered by them together, and the charges covering, as they did, the same proposition of law, qualified and explained each other. The two charges, when read together, certainly contain a correct statement of the law on the subject to which they refer. The trial court, therefore, cannot be put in error for giving the said written charge to the jury at the request of the plaintiff.

(5) The engineer who had charge of the engine which struck the jack—if he was struck by an engine of the defendant—testified as follows: "I was keeping a steady lookout when we passed Bingham's place and the place where it is claimed the jack was struck, and I did not see the jack or anything else on the track. The headlight was burning and in good condition, and the engine and appliances were in good condition. The track was curved at that place. I was running the train slowly, 20 or 25 miles an hour, because *I was looking out for that old jack;* had seen him about the track several times before, and had stopped my train once or twice to

let him get off the track. I was keeping a lookout all the way as we approached and passed that place. That was the only train that passed along there that night. My attention was not called to the claim of Mr. Bingham that his jack was struck that night, until several weeks later, when I was sick and they wrote me about it; and I looked at my records and found that I was the engineer of that train that night, and I *know I was keeping a lookout* because I *was always keeping a lookout for that old jack up there.* I know he could not get *out of the way easy,* and I was afraid to hit him with the engine. The track was straight for a distance of 50 yards north of the place where it is claimed the jack was struck. At the rate of speed the train was running it could have been stopped within that distance."

We have quoted the above testimony for the purpose of calling attention to the fact that the jury had the right—if they undertook to so reconcile the above statements of the engineer with the physical facts in this case so as to make the engineer speak the truth—to draw the conclusion that the engineer had no recollection of exactly what he was doing when he passed the named point on the named night, but that he testified that he was on the lookout for the jack at that point on that night because he had been accustomed to look out for him at that point. "I looked at my records and I know I was keeping a lookout for that old jack up there," says the engineer. In other words, says this engineer, it had been my custom to look out for that old jack, and while I have no independent recollection of the specific night and of what I was doing at that point on that night, yet my records show that I was on the engine that night, and I swear that I was on the lookout for the jack because it was my custom to look out for him at that point.

[Nashville C. & St. L. Ry. v. Bingham.]

The jury found—as we think they had, under the entire evidence, the right to find—that this engine struck the jack. They had, under this evidence, the right to find that the track was straight for at least 50 yards north of the place where the jack was struck. They had a right to find—because the jack was evidently an animal slow in his movements, "he could not get out of the way easy"—that the jack was on or in dangerous proximity to the track when the engine was at least 50 yards from him. They had a right to find, under the evidence, that, if the headlight of the engine was in good working order and the engineer was keeping a proper lookout, the engineer would have seen the jack in time to do what, on previous occasions, he did do, viz., to have "stopped his train to let him get off the track." They therefore, under all the evidence, had a right to find that on the named occasion the engineer was guilty of negligence.

As was said by the writer of this opinion in *Mobile Light & Railway Co. v. Davis,* 1 Ala. App. 338, 55 South. 1020: "If a witness swears that a certain object is white, and there is any evidence in the case tending to show that the object was not white, but black, the jury may so find by their verdict, and the court has no right to direct that they shall not so find."

In this case the trial court committed no error in refusing to give, at the written request of the defendant, affirmative instructions in behalf of the defendant as to count 1.

(6) When the jack was injured the plaintiff made a claim against the defendant for $125 as his damages on account of his injuries. Subsequent to that time the plaintiff claims that the injuries were discovered to be more serious than was at first supposed, that the injuries rendered the jack useless for service, that he died,

from the injuries, within ten months after he received them, and that during that period he was a helpless burden on his hands. The evidence for the plaintiff tended to show that the jack was worth not less than $400, and that the jennet, which was killed after the jack, was worth not less than $200. The evidence for the defendant tended to show that the jack was old, diseased, and worth much less than $400. The evidence for the defendant also tended to show that the jennet was worth much less than $200. The jury rendered a verdict in favor of the plaintiff for $449.82 as the value of both animals, which, we presume, was $400 for the two animals, and the interest thereon.

There was a motion in the trial court for a new trial upon the ground, among others, that the verdict was excessive. The court overruled the motion for a new trial. The evidence in this record is such that we do not, under the well-known rules which have been so long established by this court, feel authorized to disturb the ruling of the trial court on the defendant's motion for a new trial.

There is no error in the record. The judgment of the court below is affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.