58 So.2d 122 .

### GRIEF BROS. COOPERAGE CORP. v. STACEY.

#### I Div. 379.

Supreme Court of Alabama.
April 10, 1952.

J. M. Coxwell, Monroeville, and Wm. Hamilton and Powell & Hamilton, Greenville, for appellant.

C. L. Hybart and R. L. Jones, Monroeville, and Hill, Hill, Stovall & Carter, Montgomery, for appellee.

LIVINGSTON, Chief Justice.

A. G. Stacey and J. H. Stacey were brothers. They owned, jointly, 1,020 acres of timber lands in Monroe County, Alabama. On March 12, 1942, the brothers entered into an oral agreement under the terms of which J. H. Stacey purchased from A. G. Stacey his undivided one-half interest in the timber on the land measuring, as to the pine timber 12 inches and up, 6 inches from the ground, and as to the hardwood timber, 14 inches and up, 6 inches from the ground, all as of the date of March 12, 1942.

Later, J. H. Stacey, having cut and removed some of the timber, and a dispute having arisen between the brothers, brought suit to enforce the oral contract, and to sell the land and timber and for a division of the proceeds.

A decree for specific performance of the oral contract, and for a sale of the land and timber for division was affirmed by this court on December 18, 1947. See Stacey v. Stacey, 250 Ala. 187, 33 So.2d 898.

The land was sold, including all the timber thereon, at public sale and J. H. Stacey became the purchaser at and for the sum of $95,000.

On reference, the Register was ordered to find and report the following:

"a. To ascertain the number and value of the trees, if any, cut by the complainant during his timbering operations, of less than the specified dimensions as of March 12th, 1942.

"b. To ascertain the present amount and the present value of all timber, if any, still standing on said lands, which was of the specified dimensions on March 12th, 1942.

"c. To determine the interest on the $2,000.00 balance due on the purchase price of said timber by complainant to respondent at 6% per annum from April 6, 1942, said balance and interest to be deducted from the share of complainant and added to the share of the respondent on a division of the proceeds arising from the sale of said lands."

The Register reported as follows:

"1. Number and value of trees cut under size None.

"2. Amount and value as of the 9th day of April, 1948, on all pine timber as of the specified dimensions on March 12th, 1942.
Two million feet at $18 per thousand, $36,000.00.
Amount and value as of the 9th day of April, 1948, on all hardwood timber as of the specified dimensions on March 12th, 1942. Seven Hundred Fifty thousand feet at $10.00 per thousand, $7,500.00

"3. Amount of interest and principal on $2,000.00 at 6% from April 6, 1942 to July 3, 1948, $2,759.00."

J. H. Stacey excepted to all of the Register's report except item (a). The court

below sustained the exceptions and entered a decree finding that there was, as of March 12, 1942, 3,026,112 feet of pine timber 12 inches and up 6 inches from the ground, and 955,974 feet of hardwood timber 14 inches and up 6 inches from the ground, and fixed the value of the pine timber at $20 per thousand feet, and the value of the hardwood timber at $12 per thousand feet. The lower court also changed the interest computation from $759 to $749, but that item is not questioned here.

After affirmance by this court of the first appeal, A. G. Stacey sold his interest in the land and timber to Grief Bros. Cooperage Corporation. Grief Bros. intervened after the rendition of the decree sustaining the exceptions to the Register's report, and no question is raised as to the intervention. Pending the appeal A. G. Stacey died. A. G. Stacey's heirs are not interested in the suit and Grief Bros., on submission, severed in the assignments of error.

The cause was submitted here on the merits and motion to dismiss the appeal.

■ The motion to dismiss is based on the proposition that appellant has accepted the fruits of the decree of the court below. Admittedly, the · Register, without being requested to do so, mailed to Grief Bros. a check for its part of the proceeds of sale of the property. The motion to dismiss is denied for two reasons. First, restitution has already been made. Bell v. Crowe, 221 Ala. 609, 130 So. 377; Riddle v. Hanna, 25 Ala. 484; Knox's Distributees v. Steele, Adm'r, 18 Ala. 815; Bradford v. Bush, 10 Ala. 274. And second, Grief Bros. cannot recover less than the sum allowed it in the court below. Phillips v. Towles, 73 Ala. 406; Tarleton v. Goldthwaite's Heirs & Adm'r, 23 Ala. 346; McCreeliss' Distributees v. Hinkle, 17 Ala. 459; McCalley v. Otey, 103 Ala. 469, 15 So. 945; McWilliams v. McWilliams, 216 Ala. 16, 112 So. 318.

■ On the merits, the sole point at issue is the distribution of $95,000, the sale price of the land and timber, according to the interest of the parties as defined by the decree of the lower court, dated March 14, 1947. The question thus presented is one of fact, governed of course, by the usual presumption attending the findings of the Register who examined the witnesses orally before him. However, it is also well to note that such finding loses much of its force, though still existing, where the testimony concerns the value of property, opinion of experts, estimates and the like. McWilliams v. McWilliams, 216 Ala. 16, 112 So. 318; Dent v. Foy, 214 Ala. 243, 107 So. 210. And further, it is still incumbent upon the appellant to show error in the decree of the lower court. Campbell v. Campbell, 252 Ala. 487, 41 So. 2d 185; Sumner v. Caldwell, 244 Ala. 149, 12 So.2d 391; Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244; Mobile City Lines v. Alexander, 249 Ala. 107, 30 So.2d 4; Gavin v. Hughes, 249 Ala. 126, 30 So.2d 245.

With the foregoing principles in mind, we have carefully considered the evidence and are to the conclusion that the lower court was not in error in sustaining appellee's exceptions to the Register's report.

The problem presented is most difficult, and one which cannot be determined with exact accuracy, except perhaps by reducing the timber to actual lumber.

■ The findings of the Register as to the amount of the timber sold in 1942 now standing on the land was based upon two facts. The first was that the timber grew 2 inches in diameter during the intervening six years. The second was that the actual amount of such timber could be found only after testimony of experts who cruised it.

Witnesses for appellant and men appointed by the Register to make a cruise of the timber, testified that in their opinion there were, in round figures, 1,500,000 feet of pine timber and from 376,000 to 696,000 feet of hardwood timber now standing on the land which was above the specified size on March 12, 1942. All of these witnesses made what was called a 10% cruise. It is sufficient to state that, although considered the normal and accepted manner of making a cruise of timber, it is an estimate based on a survey of the area by 20 or 40 acre plats, rather than an actual count and measurement of trees of the area. The

length of time devoted to this type cruise varied from two to four days, during which time the cruiser walked the area, either recording his estimate by forties or merely adding mentally as he progressed. There is no actual counting of trees or measurement as to size. However, these witnesses appear to be experts and have had considerable experience in the business of cruising timber.

Appellee secured the services of an established timber cruising company to make what is known as a 100% cruise, or a tree to tree · count. Employees of this firm spent fourteen days on the land. Each tree to be considered was actually counted and marked by paint as having been counted. All trees counted were actually measured unless obviously above size. Each tree is estimated by the cruiser as to the number of 16 foot logs the tree will make. After tabulation of the total number of trees, the resulting figure was applied to a scale to determine how many feet of lumber can be cut from the trees. The scale used by this firm was one of its own making, although there are several standardized scales used throughout the country. As a result of their cruise, employees of this company testified as to the findings— 3,026,112 feet of pine timber and 955,974 feet of hardwood timber. The men used in this operation were men with less experience in the timber cruising business than the cruisers for appellant, but apparently capable in the use of the methods of the 100% cruise.

The Register faced with this divergence of opinion found 2,000,000 feet of pine timber and 750,000 feet of hardwood timber. His finding was thus a compromise between the opinions of the two types of cruisers. Such finding is perfectly permissible under our decisions, either in a Register's report or by a jury. Andrews v. Frierson, 144 Ala. 470, 39 So. 512; Nashville C. & St. L. Railroad v. Bingham, 182 Ala. 640, 62 So. 111; Smith v. Heath, 207 Ala. 4, 91 So. 799; 20 Am.Jur.Evid., p. 1059.

The question remains whether the lower court was correct in overturning the Register's report which carried with it that presumption of correctness noted above.

The brief analysis of the two types of cruises clearly shows the advantages of the 100% cruise. But the Register was not bound to give it sole importance. He heard the testimony of those men who made the 10% cruise; he heard their methods of cruising. The issue was one of fact, but one impossible of absolute certain determination. The methods employed to ascertain the amount of timber involved were both based on estimate. The shortcomings of the 10% cruise are apparent.

With the basic difficulty of determining the amount of growth, we believe, as did the trial court, that the 100% cruise is by far the more accurate, and comes nearer to a just and proper determination of the differences between the parties.

The testimony as to the value of the pine timber and hardwood timber was of a similar vein. Witnesses for the appellant placed the value of the pine at from $10 to $15 per thousand, and around $8 to $10 for the hardwood. Testimony for appellee showed the value at from $18 to $20 for pine, and $10 to $12 for hardwood. The Register set the values at $18 for the pine, and $10 for the hardwood. The lower court in its decree sustaining appellee's exceptions to these figures set them at $20 for the pine and $12 for the hardwood. In our opinion this act of the trial court was also proper and right. Let the judgment be affirmed.

Affirmed.

BROWN, · LAWSON and STAKELY, JJ., concur.