Larry Savage Chevrolet, Inc., (Savage) appeals from a judgment in favor of Michael Richards in his suit for fraud in connection with the sale of an automobile. Richards was awarded $4000 in compensatory damages and $62,500 in punitive damages.
The evidence at trial reveals that Richards went to Savage's car lot looking for a new Chevrolet Camaro automobile. He found a white Camaro that he liked among the new cars on the lot. Richards and Jack Armstrong, a salesman at Savage, examined the car. Richards noticed that a section of stripe was missing on the front *Page 1170 
spoiler and that there appeared to be paint overspray, as if the car's finish had been touched up. Richards questioned Armstrong about this, and Armstrong, while disavowing specific knowledge concerning these defects, speculated that the car was damaged when it was unloaded from the transport truck. Richards testified that at that time he informed Armstrong that he was concerned about whether the car had been wrecked. He said he always bought new cars because they had a "known history." Richards and Armstrong agreed to meet the following Sunday in order to allow Richards's fiancee to inspect the car, because he was buying it for her use. Armstrong also agreed to find out more about the damage.
Richards and his fiancee returned on Sunday and test drove the car. Richards and Armstrong then began negotiating for the sale of the car. During these negotiations Armstrong informed Richards that the car had been damaged when vandals jacked up the front end, stole the tires, and then dropped the car. Richards agreed to buy the car, and the car was delivered to Richards's fiancee the next day.
When the car was delivered, Richards's fiancee signed a form entitled "Acknowledgement of Disclosure by Dealer of Damaged and Repaired Motor Vehicle." This form indicated that the wheels had been stolen, the two front fenders had been replaced, the left "1/4" panel repaired, and the front spoiler replaced, and that the repaired areas had been refinished and restriped. There is a dispute as to whether the blank in the form which contained this information had been filled in at the time Richards's fiancee signed the form.
Richards noticed other defects in the car over the next six months. When the car was taken to another Chevrolet dealer to have a windshield problem repaired, he was informed that the windshield in the car was not the factory installed windshield. Richards filed suit. Subsequently he found out that the car had been more extensively damaged than he was originally told, and that the windshield and hood also had been replaced as the result of the prior vandalism.
Savage contends that Richards could not have relied on any alleged misrepresentation because he had made up his mind to purchase before any alleged misrepresentation was made. We disagree. The evidence shows that Richards questioned Armstrong concerning the damage on Richards's initial visit to the car lot. Armstrong told him that he guessed the damage occurred during unloading but that he would find the exact cause before Richards returned. When Richards returned, he was told that the car had been jacked up, the wheels stolen, and the car dropped. Armstrong admitted that he told Richards this while they were negotiating the price of the car, and that Armstrong assumed the damage was taken into consideration when negotiating the price.
In addition, Richards made it clear that he wanted a "new" car. The car he purchased was represented as being a "new" car. Savage maintains that this was not a misrepresentation because the car had never been the subject of a first sale for use. Code 1975, § 32-8-2 (10). However, the definition of "new vehicle" in § 32-8-2 (10) is only for the purposes of the Alabama Uniform Certificate of Title and Antitheft Act. We have previously rejected adopting an objective legal test as determinative of the "new car" issue. BoulevardChrysler-Plymouth Inc. v. Richardson, 374 So.2d 857 (Ala. 1979). The jury, in accordance with a "reasonable expectations" standard, could have found from the evidence that Savage falsely represented that the car was "new." There was substantial evidence from which the jury could find that fraudulent representations were made prior to the consummation of the sale and that Richards relied upon them.
Savage raises several issues concerning the award of damages. Savage first questions the competency of Richards to give an opinion as to the fair market value of the car as it actually existed. The general rule is that "[t]he owner of personal *Page 1171 
or real property may testify as to the value of such property without other qualifications." C. Gamble, McElroy's AlabamaEvidence, § 128.11 (3rd ed. 1977). While Richards admitted that he did not know the value of used cars in general, he had purchased a number of cars in his lifetime and he had looked at about thirty new and used Camaros since he began experiencing trouble with his car. We disagree with Savage's assertions that Richards was incompetent to give an opinion as to the value of the car.
Savage also contends that the award of compensatory damages was the product of conjecture and compromise. Initially we note that "jury verdicts carry with them a presumption of correctness, such presumption being strengthened when a motion for a new trial is denied by the trial court." Carroll KenworthTruck Sales, Inc. v. Leach, 396 So.2d 1044, 1046 (Ala. 1981). Such is the case here.
Generally, in an action for fraud the measure of damages is the difference between the value of the property as represented and its actual value. Mobile Dodge, Inc. v. Waters,404 So.2d 26 (Ala. 1981). Armstrong testified that the difference in value was zero. Richards testified in effect that the difference in value was between $4900 and $5900. The jury awarded $4000. The role of the jury in determining damages is discussed in Stone v. Echols, 351 So.2d 902 (Ala. 1977):
 "[W]here a jury hears opinion testimony on value, its prerogative is to give to that testimony such weight as its general knowledge and experience dictate. Andrews v. Frierson, 144 Ala. 470, 39 So. 512 (1905). On the other hand,
 "`Where . . . the jury verdict cannot be justified upon any reasonable hypothesis presented by the evidence, it ought to be set aside upon proper proceedings as being the result of compromise or mistake, for neither the court nor jury have the right to arbitrate or compromise differences between the parties. . . .' Donavan v. Fandrich, 265 Ala. 439, 440, 92 So.2d 1, 2 (1957).
". . . .
 "In Farmers Ginners Cotton Oil v. Reliance Ins., 341 So.2d 147 (Ala. 1976), we quoted from Mr. Justice Coleman's opinion in State v. Crawford, 277 Ala. 568, 173 So.2d 109 (1965), as follows:
 "`"In deciding this case, we are not unmindful of the rule that evidence of value is necessarily opinion evidence, and that it is not conclusive on courts and juries, even when without conflict. Dean v. County Board of Education, 210 Ala. 256, 97 So. 741 [1923]; State v. Hunter, 270 Ala. 57, 116 So.2d 383 [1959]. In this connection, however, there is also the rule that there is no `absolute' or `unrestricted' right in the trier of facts to disregard evidence of witnesses declared competent by the statute, § 367, Title 7 [Code 1940], whether expert or not. Such evidence is not conclusive, as of course, but is to be considered like other evidence in connection with all the facts and circumstances and in the light of the knowledge and experience of the jury in finding the true value. O'Neill v. City of Birmingham, 221 Ala. 580, 130 So. 87 [1930]."' 341 So.2d at 148."
Id. at 903, 904. In this case the jury heard conflicting opinion testimony as to the difference in value of the car and returned a verdict for an amount within the range of values given. Under these facts we find no error. See, Smith v. Heath,207 Ala. 4, 91 So. 799 (1921); Nashville, Chattanooga St.Louis Railway v. Bingham, 182 Ala. 640, 62 So. 111 (1913).
Finally, Savage contends that there was no evidence that would authorize an award of punitive damages or, alternatively, that even if there was such evidence, the award of $62,500 was excessive. We disagree.
Defendant contends that in order to sustain the jury verdict of punitive damages, an intent to deceive and injure must be present and the fraud must be gross, malicious, or oppressive.Mobile Dodge, Inc. v. Waters, 404 So.2d 26 (Ala. 1981). There *Page 1172 
was evidence presented from which the jury could find that punitive damages were authorized. It is undisputed that Savage knew the car had been extensively damaged and repaired. It is also undisputed that Savage had a fairly elaborate procedure to ensure that its management discloses damages to a car to the buyer. As part of that procedure, when Armstrong sought the sales manager's approval of the deal, the transaction folder on that car should have been checked. That folder clearly indicated that disclosure was required concerning the damage to the car, yet only part of the damage was disclosed. Savage's secretary-treasurer testified that it would be "extremely unusual" for a proper disclosure not to be made. Armstrong testified that the Camaro was "the hottest piece of merchandise on the lot," yet it took about five months to sell this particular car. In Boulevard Chrysler-Plymouth, Inc., supra, we affirmed an award of punitive damages in a case analogous to the case before us. In that case the dealer represented as "new" a car that had been extensively damaged and repaired. While I dissented as to the award of punitive damages in that case, the evidence of misconduct which would authorize an award of punitive damages in this case is much stronger.
"Damages are considered excessive if they shock the judicial conscience or are so great as to indicate they are the product of sympathy, passion, or prejudice." Village Toyota Co. v.Stewart, 433 So.2d 1150, 1155 (Ala. 1983). The trial court denied a motion for new trial on the ground that the damages were excessive; therefore, the presumption of correctness as to the jury verdict is strengthened. We find no indication that the verdict is the product of sympathy, passion, or prejudice; therefore, the verdict is due to be upheld.
In summary, we find no error in the proceedings below. The judgment is affirmed.
AFFIRMED.
FAULKNER, ALMON, EMBRY and ADAMS, JJ., concur.