(87·South. 191)

ALABAMA CITY, G. & A. RY. CO. v. KYLE et al. (7 Div. 37.)

(Supreme Court of Alabama. Oct. 28, 1920.)

1. **Bills and notes ⊙⟶126 — Recovery under single count on one note for attorney fees for other notes involved in another count improper.**

Despite defendant maker's general obligation in respect of attorney's fees, it should not, in an action under a count on a single note, be adjudged liable for the value of services of plaintiff holder's attorney, rendered necessary by issues raised on trial of another count declaring on all the notes.

2. **Appeal and error ⊙⟶237(2)—Irrelevant answer to proper question must be met by motion to strike or instruction.**

If witnesses as to the value of attorney's services in action on notes in answer to proper questions failed to discriminate between services rendered in the prosecution of different demands, the fact should have been developed by cross-examination, and availed of by motion to exclude, or by special instructions to the jury.

3. **Bills and notes ⊙⟶126 — Holder's right to value of attorney's services on former appeal not abated by fact judgment on former appeal affected by error.**

Under stipulation within the note contract "to pay cost of collecting this note, including reasonable attorney's fee for all services rendered in any way in any suit against any maker or indorser," plaintiff noteholder could recover value of attorney's services rendered on former appeal, though defendant procured a reversal, plaintiff's right to the value of his attorney's services not being abated by the fact that the judgment was affected by error going, not to the right itself, but to the procedure whereby plaintiff sought its enforcement.

4. **Appeal and error ⊙⟶1050(2) — Railroads ⊙⟶179—Evidence in action on subscription notes irrelevant to issues and admission prejudicial.**

In an action against a railroad on subscription notes signed by its president to induce a steel company to remove its plant from one point to another, evidence tending to show that the president of defendant railroad had been appointed and served on the subscription committee, etc., held irrelevant to any issue made by the pleadings; its admission being prejudicial to defendant railroad.

5. **Appeal and error ⊙⟶1053(2) — Withdrawal of inadmissible evidence, with instruction, held not to have cured error.**

In an action against a railroad on certain subscription notes signed by its president, withdrawal by counsel after close of evidence of certain irrelevant testimony, showing that the president of defendant railroad was one of the subscription committee, etc., and instruction by the court to disregard, held not to have cured the error in its admission.

⊙⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Railroads ☞179—Testimony of city population increase irrelevant in action on railroad's subscription notes.**

In an action against a railroad on certain subscription notes signed by its president to induce removal of a steel plant from one point to another, evidence to the effect that the population of a city had increased since the removal of the plant, etc., *held* irrelevant; the admission of such testimony not being justifiable as in support of the pleas of ultra vires or failure of consideration.

**7. Witnesses ☞344(1) — Cross-examination as to whether witness had paid land company's note competent as affecting credibility.**

In an action against a railroad on subscription notes signed by its president, who was also an officer of a land company which had subscribed to the fund, cross-examination of defendant railroad's president as to whether he had paid the land company's note for it *held* admissible as affecting the credit of the witness.

**8. Railroads ☞179 — Testimony of railroad's president irrelevant.**

In an action against a railroad on subscription notes signed by its president, testimony of the president that he had affixed both the signature of the railroad and of the land company to the subscription list was inadmissible as irrelevant to any issue.

**9. Railroads ☞179—Letter of defendant railroad irrelevant.**

In an action against a railroad on subscription notes signed by its president, a letter, in which defendant railroad gave notice that it would not pay its subscription notes to which its president had signed its name without authority, etc., *held* inadmissible as not relevant to any issue.

**10. Witnesses ☞383 — Contradictory statements cannot be given in evidence unless relating to material matters.**

Previous contradictory statements of a witness, sworn or unsworn, cannot be given in evidence unless they relate to some matter material to the issue on trial.

**11. Contracts ☞294 — Substantial performance of contract to remove plant for subscription necessary.**

Where a steel company for a subscription contracted to remove its plant from one point to another, the company's obligation would have been discharged by a substantial performance of such contract, meaning in the peculiar circumstances of the case full performance according to the fair intent of the contract.

**12. Railroads ☞179—Diagram of steel plant removed in accordance with subscription plan not irrelevant.**

In an action against a railroad on subscription notes for removal of a steel plant, signed by its president, diagrams, showing the plant at the point from which removed, superposed on the diagram of the plant after removal, *held* not irrelevant or immaterial to the issue whether the steel company had fully and substantially performed its contract.

**13. Trial ☞28(2)—Grant of view discretionary.**

In an action against a railroad on subscription notes for removal of a steel plant, whether the jury should have been taken to view the plant at the point to which removed rested in the discretion of the trial judge; the witnesses having described the plant at such point.

Appeal from Circuit Court, Etowah County; O. A. Steele, Judge.

Action by T. S. Kyle and others, as trustees, against the Alabama City, Gadsden & Attalla Railway Company. From judgment for plaintiffs, defendant appeals. Reversed and remanded.

The matter referred to as occurring on page 114 of the transcript is as follows: Schuler being on the stand as witness was shown an indemnity agreement that was signed by a number of people guaranteeing the subscriptions of $150,000 to the Southern Steel & Iron Company. Among the persons signing was the Alabama City, Gadsden & Attalla Railway Company, $12,180, and Coosa Land Company, $5,320. Schuler was asked if he had not written both of the signatures, and was required to answer that he had.

Goodhue & Brindley and Dortch & Allen, all of Gadsden, for appellant.

The court erred in admitting evidence with regard to the amount of work done by the lawyers in the Supreme Court on the former appeal as a basis for the assessment of attorney's fees in this case. (C. C.) 57 Fed. 107; 8 C. J. 1101. Court erred in admitting evidence to show that Schuler was on the committee soliciting subscriptions, etc., and this was not cured by the court's perfunctory withdrawal of the evidence. 187 Ala. 490, 65 South. 528, Ann. Cas. 1916E, 565; 180 U. S. 552, 21 Sup. Ct. 474, 45 L. Ed. 663; 38 Cyc. 1441, and note; 27 Am. Rep. 575; 49 Mich. 104, 13 N. W. 377; 9 N. D. 49, 81 N. W. 67. Court erred in requiring Schuler to say that he had paid all of the subscription that the Coosa Land Company was required to pay. 85 Ala. 600, 5 South. 353; 152 Ala. 167, 44 South. 627, 12 L. R. A. (N. S.) 389. Court misconceived the law as to what constituted a fulfillment of the contract. See authorities cited in our brief in the case of Alabama City, G. & A. Ry. Co. v. Avenue Bank & Trust Company, post, p. 602, 87 South. 195.

Culli & Martin, W. J. Boykin, Alto V. Lee, and O. R. Hood, all of Gadsden, for appellees.

The stipulations in the note justified the court in admitting evidence as to attorney's fee. 146 Ala. 692, 40 South. 509. The court excluded all evidence as to Schuler's participation in the subscription, and this cured the error, if any. Counsel discuss other assign-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ments of error, and refer for authority to their briefs on former appeal and in the case of Alabama City, Gadsden & Attalla Ry. Co. v. Avenue Bank & Trust Co.

SAYRE, J. [1-3] The report of a former appeal in this cause may be seen in 202 Ala. 552, 81 South. 54. On its return to the trial court count 9, involving an alleged breach of a contract, by which appellant undertook to execute its several notes in consideration of the removal of the Southern Iron & Steel Company's plant from Ensley to Alabama City, and involving a sum much larger than the judgment now under consideration, was eliminated and the trial had upon count 1 of the complaint declaring upon one only of the notes mentioned in count 9. In this note appellant agreed "to pay cost of collecting this note, including reasonable attorney's fee for all services rendered in any way in any suit against any maker or indorser, or in collecting or attempting to collect, or in securing or attempting to secure, this debt, if this note is not paid at maturity. Appellees' evidence, tending, as appellant contends, to show the value of services rendered by appellees' attorney on the former trial and on appeal in this court, was admitted over appellant's objection. It must be conceded, we think, that, notwithstanding the general nature of the obligation assumed in respect of attorney's fees, appellant should not, in the action shown by count 1, be adjudged liable for the value of services which may have been rendered necessary by issues raised on the trial of count 9; and doubtless the trial court would have so ruled had its judgment on that precise question been invoked; but there was no such invocation, and error cannot be declared. Some questions propounded by appellees were aptly framed to elicit the competent and relevant opinions of the witnesses as to the value of services rendered in and about the collection of a note like unto that described in count 1, and if the witnesses failed to discriminate between services rendered in the prosecution of the different demands, that fact should have been developed by cross-examination and availed of by motion to exclude or by special instructions to the jury. One of the witnesses, who appeared as an attorney for appellant on both trials, seems to have made his statement of the facts without being interrogated, and the record shows that appellant "objected to the statement of the witness." He spoke of the value of the services rendered by appellees' attorneys on the former trial without an effort to discriminate between such services as were necessary and proper in the enforcement of the demand set forth in count 1 and such as may have been occasioned by the effort to enforce the larger and different demand described in count 9. However, the objection also failed to discriminate. Indeed, it seems to have been directed mainly to the proposition that plaintiff should not be allowed to recover the value of services rendered on the former appeal in which defendant had procured a reversal. This broad proposition cannot be sustained in its entirety. So far as concerns the claim now in litigation, legal services rendered in maintaining it in this court on the former appeal were well within the stipulation of the note-contract, and in our opinion plaintiff's right to the value of such services was not abated by the fact that the judgment was affected by error which went, not to the right itself, but to the procedure by which plaintiff sought its enforcement. Plaintiff's claim, to the extent of the note and apart from the litigable issue as to the substantial performance of the contract upon which the note was conditioned, was meritorious, was declared upon in a special count, a suit in itself, unembarrassed by the allegations of count 9, and as to it and the point here under consideration defendant should have avoided occasion for the accrual of fees in the trial and appellate courts by confessing liability.

[4] Over the consistently repeated objections and exceptions of the defendant appellees were allowed to introduce evidence tending to show that E. T. Schuler, president of the defendant corporation, had been appointed and had served on a committee to raise the subscription bonus of $150,000 to induce the Southern Iron & Steel Company to remove its plant from Ensley to Alabama City—the note in suit constituting a part of the subscription—that he importuned a number of people in Gadsden to make subscriptions to the fund; that he represented to them that it would be greatly to their interest to subscribe; that it was up to them to make large subscriptions; that a committee of the Chamber of Commerce of the city of Gadsden would report whether the Southern Iron & Steel Company had complied with their contract, and more of the same general character. The cause was tried on several pleas, in short by consent, and an agreement that any other legal defense, not requiring a plea verified by oath, might be given in evidence, and the suggestion in brief is that the evidence in question would have been relevant and material to several possible defenses. The admission of this evidence cannot be justified as relevant to any issue made by the pleadings, nor does it occur to us that an issue might have been raised to which this evidence would have been relevant, save, perhaps, on a plea of non est factum, by which we mean a plea going to the authority of Schuler to sign the corporate name or the fact that he did so sign; but it was further agreed that there should be no such issue in the case. So, then, the court erred in these rulings; nor do we think it can be affirmed with any certainty that no prejudice resulted. On the contrary, the effect was to present the defend-

ant to the jury as seeking to avoid an obligation just such as it had been busy in inducing its fellow citizens of Gadsden to assume. Its strong tendency was to prejudice defendant in the eyes of the jury and in the absence of countervailing proof we can only assume it acted accordingly. Maxwell v. State, 89 Ala. 164, 7 South. 824; Galbreath v. Cole, 61 Ala. 142.

[5] But after this evidence had rested in the mind of the jury for what must have been a long time and, to quote the bill of exceptions—

"after the testimony had closed, counsel for plaintiff made the following statement to the court: 'We withdraw all the testimony showing that Mr. Schuler was a member of the Comemrical Club of Gadsden, or of the Chamber of Commerce, also the evidence that was offered showing that he went around with the committee soliciting subscriptions'. Also we withdraw the evidence to the effect that a committee was appointed by the Chamber of Commerce for the purpose of ascertaining if the steel company had complied with its contract in removing the wire and rod mill to Alabama City. We withdraw these several batches of evidence to clear the case of those questions as to some of which our friends have made so much noise.'"

Whereupon counsel for defendant moved that the case be withdrawn from the jury "after this testimony has been in and had its effect upon the jury," which motion the court overruled, saying:

"Gentlemen of the jury, you remember the testimony with reference to the committee appointed by the Chamber of Commerce, and the investigation made by that committee, and that there was a report made by that committee, and also the testimony tending to show that Mr. Schuler solicited contributions towards the $150,000 raised by this committee. All the evidence with reference to those subjects is withdrawn, and you will not consider it in your deliberations when you get to your jury room for any purpose. As much as you can, forget that sort of evidence was offered in the case."

This court has always regarded with caution the practice of admitting illegal evidence and afterwards excluding it (Green v. State, 96 Ala. 32, 11 South. 478), though reversals have been denied on that account where the trial court has, as far as practicable, removed the unfavorable impression of such illegally admitted evidence by instructing the jury to disregard it altogether. Jordan v. State, 79 Ala. 12. Of the errors committed in this case we observe: That the withdrawal was grudgingly made, as if induced by the clamor of counsel rather than as a confession of error; that the court seemed to recognize the impracticability of removing altogether any unfavorable impression the erroneously admitted evidence may have made; and that neither the withdrawal nor the instruction was as comprehensive as was the aggregate of errors of which defendant complained. We

would feel no certainty or safety in holding that there was an adequate correction of the errors involved, and our conclusion therefore is that the judgment must be reversed on account of the strong impression which was probably made on the jury by the accumulated errors on this point. Watson v. Adams, 187 Ala. 490, 65 South. 528, Ann. Cas. 1916E, 565; Throckmorton v. Holt, 180 U. S. 552, 21 Sup. Ct. 474, 45 L. Ed. 663.

[6] Evidence to the effect that the population of Gadsden had increased since the removal of the steel plant, that travel on the defendant's car line had increased, that the use of electric lights had increased, that defendant operated more cars, and that at times the cars were crowded, was all irrelevant. Its admission cannot be justified as in support of the plea of ultra vires. It may be assumed that defendant's purpose in the execution of the note in suit was to increase its earnings by bringing about the results here offered in evidence, and upon the former appeal it was held that such an engagement was within the corporate power of the defendant; but the fact that such results did follow tended no more to prove corporate power than results of a contrary sort would have tended to prove the absence of the power in question.

Nor did this evidence tend to sustain either of the pleas of failure of consideration, as those pleas were given shape and complexion by the undisputed contract shown in evidence. A favorable effect upon the volume and profit of defendant's business, it may be assumed, was anticipated as the ultimate result of the steel company's engagement, but that engagement, and not ultimate results, was what defendant bargained for. It appeared very clearly as the result of all the evidence that the sole consideration for the note in suit was the steel company's promise to remove its entire rod and wire mill from Ensley, to reconstruct the same upon an enlarged scale at Alabama City, and put it into operation, and the only litigable issue was whether the steel company had substantially performed its contract. However, error cannot be affirmed of the ruling here at issue for the reason that these pleas were pleaded in short by consent, and at the time of these rulings the court was not in a position to say that defendant's pleas might not in the evidence be so presented as to make proof of these facts admissible.

[7] The witness Schuler was president of the defendant corporation. He was also an officer of the Coosa Land Company, and that company had also subscribed to the fund to induce the removal of the steel, or rod and wire, plant. The witness, by his testimony, had attempted to establish a partial failure of the consideration for the note in suit, in that, to state its general effect, the entire plant had not been removed, and that he had all along been aware of that fact. On cross-

examination he was required to answer whether he had paid the Coosa Land Company's note for it. We derogate nothing from the rule stated in Ricketts v. Birmingham Ry. Co., 85 Ala. 600, 5 South. 353; Bessemer Co. v. Doak, 152 Ala. 166, 44 South. 627, 12 L. R. A. (N. S.) 389, when we hold that this question was admissible and competent as affecting the credit of the witness. In the brief it is suggested that the contracts differed, and hence that the witness' payment of the Coosa Land Company's subscription had no tendency to reflect upon the witness' statement as to the contract in dispute. The defendant in the case at bar did expressly stipulate for a removal of the entire rod and wire plant, and it seems that other subscription contracts were not so specific; but there can be no doubt that they all meant the same thing, and that a substantial performance did accomplish, or would have accomplished, the object the parties had in view (Tewman v. Ogden Bros., 143 Ala. 351, 42 South. 102, 5 Ann. Cas. 265), and so would have discharged the obligation of the steel company (Alexander v. Smith, 3 Ala. App. 501, 57 South. 104).

[8] We do not see that the testimony required of the witness Schuler in reference to the "indemnity agreement," set out on page 114 of the transcript, was relevant to any issue in the cause.

[9] So of the letter in which defendant gave notice that it would not pay its subscription notes, "to which the company's name was signed by him [E. T. Schuler] without authority, unless some reasonable settlement is made of the account of our [defendant] company against the Southern Steel Company for current furnished for light and power." Defendant's failure to place its refusal to pay on the ground that the steel company had not performed its contract in its entirety afforded no ground for an inference that no such ground existed at the time of the trial, for the reason that, when the letter was written, the steel company, under its contract, still had time within which to remove its plant.

[10] At the first trial defendant had filed a plea of non est factum, verified by oath. The trial under review was affected by an agreement in writing stipulating, inter alia, as follows:

"It is also agreed between the parties that E. T. Schuler, as vice president of the defendant corporation, had the authority of said defendant corporation to make, execute, and deliver the note sued on, and the contract constituting the consideration of the said note, and that, his authority being hereby admitted, that question shall not constitute an issue in this case."

Plaintiffs were allowed, first, to draw out from the witness Schuler on cross-examination the fact that he had sworn to the plea, and, second, that he had signed the note in suit. This was error. It has been uniformly held that previous contradictory statements, sworn or unsworn, cannot be given in evidence unless they relate to some matter material to the issue on trial. Steinhardt v. Bell, 80 Ala. 208; Burney v. Torrey, 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33; Crawford v. State, 112 Ala. 1, 21 South. 214; Barfield v. Evans, 187 Ala. 579, 65 South. 928. The requirement of relevancy in such case is an administrative requirement, a rule of convenience the value of which may be illustrated by the reflection that by the admission of this testimony the court and jury may have been drawn off into the consideration of much evidence as to the circumstances under which the witness had made oath to the plea. The agreement had eliminated the issue to which this testimony would have been relevant as completely as if it had never been conceived, and to permit a cross-examination as to it merely for the purpose of laying a foundation for impeaching the witness would divest the rule of its utility. 5 Chamb. Mod. Ev. § 3756.

[11] Speaking to the point raised by the admission of the letter in which defendant gave notice that it would not pay its subscription notes, we indicated an opinion, citing authorities, which upholds the trial court in charging the jury that the steel company's obligation was, or would have been, discharged by a substantial performance of its contract to remove its plant, meaning, in the peculiar circumstances of this case at least, full performance according to the fair intent of the contract. Hartsell v. Turner, 196 Ala. 299, 71 South. 658.

[12] The witness Forsythe testified to the substantial accuracy of the diagram showing the plant at Ensley superposed upon a diagram of the plant after removal to Alabama City, and it cannot be said that this diagram was irrelevant or immaterial to the issue whether the steel company had fully and substantially performed its contract. There was therefore no error in its admission. So, too, in respect to the inventory admitted over defendant's objection.

We think the trial court correctly interpreted the contract as providing for the removal of the plant from Ensley to Alabama City within a reasonable time, and properly submitted that question to the jury.

[13] Whether the jury should be taken to a view of the plant at Alabama City rested in the discretion of the trial judge. Witnesses had described the plant at Alabama City, and it was competent to have the jury test their statements by a view of the plant, and this is true though the only real contest between the parties was as to the steel company's removal of the plant according to contract, and though, as to that, an inspection of the plant at Alabama City without an

opportunity of comparison with the plant at Ensley was of negligible value.

For the errors shown in the admission of evidence, the judgment is reversed; the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BROWN. JJ., concur.

⬧For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes