(130 So. 87)
**O'NEILL et al. v. CITY OF BIRMING-
HAM et al.**
**6 Div. 285.**

Supreme Court of Alabama.
June 5, 1930.

Rehearing Denied Oct. 9, 1930.

Harsh & Harsh and Frank S. White, Jr., all of Birmingham, for appellants.

582

Wilkinson & Burton and Hollis O. Black, all of Birmingham, for appellees.

BOULDIN, J.

Appellants, John W. O'Neill and Lizzie M. O'Neill, sued the city of Birmingham and Southern Railway Company for consequential damages for alleged injuries to abutting property by the construction of a viaduct on Twenty-Fourth street in Birmingham.

Plea No. 4, set out in the report of the case, was sustained as against demurrer. This ruling is here presented for review.

■ Mere silent acquiescence in the taking of property for public use by those having the right of eminent domain, or such acquiescence in improvements resulting in consequential injury to abutting property for which just compensation is due, under section 235 of the Constitution, will not estop the owner to maintain an action for just compensation, nor be held a waiver of his right of action. Hargett v. Franklin County, 212 Ala. 423, 103 So. 40; Thornton v. Sheffield & Birmingham R. R. Co., 84 Ala. 109, 4 So. 197, 5 Am. St. Rep. 337; Southern Railway Co. v. Hood, 126 Ala. 312, 28 So. 662, 85 Am. St. Rep. 32.

■ But, in such case, if the owner becomes active in the procurement of the improvement, and by request or petition invites the making of the improvement as made, he cannot thereafter claim damages for the thing to which he has so given his consent. The maxim, "Volenti non fit injuria," is given application. Town of New Decatur v. Scharfenberg, 147 Ala. 367, 41 So. 1025, 119 Am. St. Rep. 81; Scharfenburg v. Town of New Decatur, 155 Ala. 651, 47 So. 95; Goetter, Weil & Co. v. Norman Bros., 107 Ala. 585, 596, 19 So. 56; 1 C. J. p. 971.; 44 C. J. pp. 452, 453.

Plea 4 avers a demand made by plaintiffs upon the city that the "viaduct that was constructed * * * be constructed in substantially the way and manner in which it was constructed."

This negatives any idea of the construction of a viaduct of substantially different type from that requested or in contemplation when request was made.

Whether there was a substantial change in the width of the proposed viaduct, and whether there was a withdrawal of consent made known to the city before the request was acted upon, were issues of fact presented by the plea.

■ If consent was withdrawn before the city made any commitments or outlays in keeping with such request, the same was no longer operative whatever the motive of withdrawal.

█ If the consent had no reference to the particular type of viaduct, but related to such viaduct as the city should see fit to adopt, it could not be withdrawn after the city had incurred the labor and expense, and made the commitments set forth in the ordinance made part of the plea.

█ It was not necessary that the request or demand of plaintiffs should be a leading or controlling inducement.

█ The doctrine "Volenti non fit injuria" means, "That to which a person assents is not in law an injury." 40 Cyc. 217.

Our rule that acquiescence alone does not defeat a claim for damages in cases of this class grows out of the status of the parties where the right of eminent domain is involved.

Where the party actually invites the taking of his property or the imposition of a servitude upon it for public use, which invitation is accepted, his act partakes so far of the nature of a dedication that our decisions have applied the doctrine "volenti non fit injuria."

Certain grounds of demurrer are directed to plea 4 as a sufficient defense on behalf of Southern Railway Company, sued with the city.

It appears from Ordinance 982-C, made part of the plea, that the city, claiming the right to require railroad companies to construct viaducts to eliminate grade crossings, entered into a contract with several railroad companies whereby Southern Railway Company, as agent for and on behalf of all parties, should construct the viaduct on Twenty-Fourth street on plans and specifications approved by the city under joint supervision, and at the joint expense of the city and the several railroad companies.

By the contract the city assumed all liability for damages to property owners by reason of such improvement.

█ A waiver or estoppel, to be effective on behalf of the city in such case, must inure to the agents of the city constructing the viaduct. A request that the city build the viaduct naturally contemplated that it do so through contract or agencies of its selection. The same principle under which the city is exonerated would therefore exonerate the contractor or agent of the city. We need not decide whether the agent or contractor of a municipality engaged in making street improvements is guilty of a tortious act rendering him liable with the city for consequential damages not paid in advance, under section 235 of our Constitution.

Demurrers to plea 4 were, therefore, properly overruled.

The evidence in support of the plea tended to show the plaintiff John W. O'Neill was a member of a delegation requesting the building of the viaduct, and a participant in a protracted movement to induce the city to construct it.

Appellants insist this falls short of any evidence of a "demand" as averred in the plea, and that the court was in error in his oral charge using the word "request" instead of "demand."

In general, it cannot be said that "demand" is the legal equivalent of "request," and vice versa.

Taken in its connection and in view of the subject-matter of the plea, and the tendencies of the evidence tending to show the request was such as is often called a popular demand by the citizenship upon a governing agency, we do not think there was such failure of proof as called for the affirmative charge, nor that error to reverse should be predicated on the exceptions reserved to the oral charge.

Plaintiffs introduced several witnesses of long experience as dealers in and appraisers of real estate in Birmingham. Their evidence tended to show a reduction in the market value of the real estate in question as a result of the construction of the viaduct.

█ A series of given charges for defendants, numbered 53, 54, 55, 56, and G, deal with the weight and consideration to be given such evidence.

Charge 53 is not objectionable. In effect, it declares such evidence is not binding on the jury, that they are not bound to accept it, and that it may be disregarded if, in their sound judgment, it should be disregarded upon consideration of all the evidence.

Charge 54 is to like effect with a charge sustained in United States v. Goodloe, 204 Ala. 484, 486, 86 So. 546.

Charge No. 56 embodies substantially the language of the Supreme Court of the United States quoted with approval in Andrews v. Frierson, 144 Ala. 470, 39 So. 512, 514, wherein this court was dealing with the report of a register fixing the value of the services of an auctioneer. After reviewing the authorities, this court said:

"The rule, then, to be deduced from the authorities, would seem to be that, where the facts and circumstances attending the rendition of services and the nature of the services are developed by the evidence, opinions of witnesses as to value are not conclusive, but may be considered as advisory, and the register must use his own judgment, guided by the evidence and assisted by such opinions."

The rule thus stated is quite different from that in charge 56.

Manifestly much may depend on the nature of the case as touching the right of the triors of fact to disregard opinion evidence of market value and act wholly on their own judgment. For instance, judges of courts in dealing with counsel fees in a cause before them

have special knowledge of the subject-matter. Again, things bought and sold every day within the common knowledge of the juror may be valued by him with assurance.

But where, as here, the value of real estate arises primarily from its location within a city, many elements, such as frontage on a busy paved street, availability for various classes of business, may well influence the prudent buyer in purchasing the property for improvement or for investment. Jurors cannot be presumed to have such adequate knowledge of the value of all city property that they should be instructed, "You may deal as you please" with expert opinion evidence of value.

In Batterton v. City of Birmingham, 218 Ala. 489, 119 So. 13, this court dealt with the following charge:

"The Court charges the jury that the jury is at liberty to disregard the opinion of experts whenever the jury believes that such opinions should be disregarded."

We there said:

"We do not construe the charge given for defendants, which constitutes the sixteenth assignment of error, as instructing the jury they may capriciously disregard the opinion evidence of experts. It is the duty of the jury to duly weigh and consider all evidence offered in the cause, but if upon due consideration they are not impressed with the expert evidence, which is not binding on them, then they may disregard the same. The charge may well have been refused as misleading, but it states no incorrect proposition of law, and no reversible error was here committed."

Given charges 55 and G, here complained of, go beyond any of the instructions heretofore tolerated as merely misleading.

Charge 55 declares the "absolute right to entirely disregard" expert opinion as to market value, and reach a conclusion "independent" of such evidence, on their own "experience and knowledge" in connection with all the "other" evidence in the case.

Charge G invests the jury with the "unrestricted right to disregard" such evidence, and base a finding on "all the facts and circumstances independent of the evidence of experts."

The "absolute" or the "unrestricted" right to disregard competent and legal evidence in a case can only mean the right to arbitrarily disregard it, put it out of the case with or without good reason. These charges are the equivalent of capricious disregard of evidence.

Even in cases of total lack of moral force behind evidence, cases of perjury, the jury may not disregard such evidence until, upon due consideration, they find the witness has willfully sworn falsely to a material fact.

Code, § 7656, reads:

"Direct testimony as to the market value is in the nature of opinion evidence. One need not be an expert or dealer in the article, but may testify as to value, if he has had an opportunity for forming a correct opinion."

This section does not deal with the weight of nor right to discard opinion evidence of market value. It defines a competent witness, not limited to an expert or dealer, but to include one who "has had an opportunity of forming a correct opinion."

There is no "absolute" nor "unrestricted" right in the trier of facts to disregard evidence of witnesses thus declared competent, whether expert or not. It is not conclusive as of course, but is to be considered like other evidence in connection with all the facts and circumstances and in the light of the knowledge and experience of the jury in finding the true value. In the giving of charges 55 and 56 and G there was error to reverse.

 The property in question fronts 140 feet on Twenty-Fourth street, and 100 feet on Avenue A, on which railroad tracks are located. Improvements on the property were meager, a small wooden store and some negro tenement houses.

Twenty-Fourth street was paved but crossed numerous railroad tracks at grade. The viaduct removed the tide of travel along the Twenty-Fourth street front of this property, passed it over the viaduct at that point, leaving a 15-foot passway between the viaduct and the property line open for ingress and egress, and other uses.

Much evidence, not without conflict, was devoted to the question of loss of market value because of present adaptability to business purposes in a light industrial district of this kind. Other evidence at length dealt with the possibility or probability of it developing into a retail property as an element of present market value.

While the "future" of property, such reasonable certainty of future development as reasonably satisfies the jury that such prospect affects its present market value, may and should be considered, much caution should be observed that speculative values based on the uncertainties of the indefinite future shall not enter into the verdicts of juries.

In dealing with the future of this property, all the elements which an intelligent buyer would consider should be taken into account. If here is a street carrying a heavy and increasing traffic, but passing at grade over many railroad tracks in constant use, so that for the public safety and convenience a viaduct should be expected, and actual movements, legal and otherwise, are on to construct

It, these facts should enter into the equation when considering the prospect of development into another and different class of property. Values may not be inflated by future prospects based on the assumption that public safety and convenience will be disregarded.

In view of the evidence we find no error to reverse in defendants' given charges 57, C, and J, nor either of them. Alabama Central R. Co. v. Musgrove, 169 Ala. 428, 53 So. 1009.

Let this suffice for a sufficient guide on another trial.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.