231 So.2d 887

**Walter J. KNABE and Mary Will Knabe**

v.

**STATE of Alabama.**

**3 Div. 274.**

Supreme Court of Alabama.

Feb. 12, 1970.

Rufus M. King, Montgomery, for appellants.

Goodwyn, Smith & Bowman and Sterling G. Culpepper, Jr., Montgomery, for the State.

COLEMAN, Justice.

The landowners, husband and wife, appeal from a judgment of the circuit court condemning for public use a parcel of land situated in the City of Montgomery.

The jury awarded $43,500.00 as compensation to the owners of the land and judgment was rendered accordingly. The owners filed motion for new trial on the ground, among others, to effect that the amount of the award is inadequate. The motion was overruled and the owners appeal.

1.

The valuation date was April 22, 1965. The condemnor called one of the owners, the husband, as a witness. As here pertinent, his testimony on direct examination is as follows:

"Q  For the record, this is Mr. Walter J. Knabe?

"A  That's right.

"Q  One of Montgomery's most distinguished practicing attorneys and, incidentally, the owner of this subject property.

"A  I deny the first, but the second I admit.

"Q  Walter, and I hope you will permit me to call you that, when did you first buy this property?

"A  I bought it in last part of 1945.

" . . . . . . . . . .

"Q  How much did you pay for this property in 1945?

"MR. KING: Your Honor, we object to that, if the Court please.

"MR. SMITH: Your Honor, it is material.

"MR. KING: We have a case on that, Your Honor.

"MR. SMITH: Well, I would like to see it if I can't show what the owner paid for it.  Do you object to the question, first of all, as to what the owner paid for it when he bought it?

"MR. KING: Yes, sir.

"THE COURT: Let me see the case you referred to.

"MR. KING: Yes, Your Honor. Here it is.  Now, Your Honor, that was in 1945 which is better than twenty years ago—

"MR. SMITH: Well, I understand that, but the first question I asked was when it was acquired.  I am not trying to say what he paid for it as that wouldn't have any bearing as to what it is worth today, but I think we are entitled to know.

"THE COURT: I think I can adequately cover that in the charge. I overrule the objection.

"THE WITNESS: I paid $5,250.00 for it.

"MR. KING: We except."

The owners assign as error that the court erred in overruling their objection to the question: "How much did you pay for this property in 1945?"

It will be noted that counsel for the condemnor stated:

" . . . . I am not trying to say what he paid for it as that wouldn't have any bearing as to what it is worth today, but I think we are entitled to know."

The general rule is that competent evidence of the price paid by the owner for the property sought to be condemned is admissible as tending to illustrate or bearing probatively on its market value, unless the sale was too remote in point of time from the condemnation proceedings as to afford no fair criterion of present value, or if otherwise shown to be without probative force, as where the sale was not a voluntary one or where other special considerations conduced the sale at other than the true market value.  Thornton v. City of Birmingham, 250 Ala. 651, 654, 35 So.2d 545, 7 A.L.R.2d 773.

It is within the trial court's discretion to determine whether the evidence is too remote, and its ruling in that regard, unless plainly erroneous, is not revisable on appeal.  Sayers v. City of Mobile, [7], 276 Ala. 589, 592, 165 So.2d 371, 9 A.L.R.3d 283.

Common knowledge appears to require the conclusion that the sale price in 1945, of land on a busy street in Montgomery, is too remote in point of time from the year 1965 as to afford a fair criterion of the value of the land at the later date.  Counsel for condemnor stated " . . . . that wouldn't have any bearing as to what it is worth today . . . . .."  The court gave the landowners' requested written charges that " . . . . the cost of the property in 1945 is not a proper factor in determining the market value of the property in April 1965 "; and that the date of the owner's purchase " . . . . is so long ago that you should not consider what he paid for the property."

This record shows that all parties and the court are in agreement that evi-

dence of the price paid in 1945 was not proper to be considered by the jury in determining the value of the land in 1965. Admission of evidence of the 1945 price was plainly erroneous.

The condemnor argues that the error was cured by the giving of the owners' requested instruction that the 1945 price should not be considered.

By admission of evidence of the 1945 price, the owners were placed in the position of seeking what some might regard as an excessively large profit on a comparatively small investment. The evidence of the 1945 price is clearly prejudicial.

At the time objection was overruled and the evidence erroneously admitted, the trial court indicated an intention to subsequently instruct the jury to disregard the evidence. The evidence was never clearly excluded or withdrawn. In oral charge, the court said to the jury, among other things:

"  .  .  .  .  I stated that you are the triers of the facts. However, you are bound by the evidence in ascertaining what the facts are. The evidence that came from this witness stand is to be the boundary of your deliberations. . . . . ."

In reversing a judgment because of the admission of illegal evidence which the trial court had withdrawn and charged the jury to disregard, this court said:

"This court has always regarded with caution the practice of admitting illegal evidence and afterwards excluding it (Green v. State, 96 Ala. [29] 32, 11 So. 478), though reversals have been denied on that account where the trial court has, as far as practicable, removed the unfavorable impression of such illegally admitted evidence by instructing the jury to disregard it altogether. Jordan v. State, 79 Ala. [9] 12. . . . . We would feel no certainty or safety in holding that there was an adequate correction of the errors involved, and our conclusion therefore is that the judgment must be reversed on account of the strong impression which was probably made on the jury by the accumulated errors on this point. Watson v. Adams, 187 Ala. 490, 65 So. 528, Ann.Cas. 1916E, 565; Throckmorton v. Holt, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663." Alabama City, G. & A. Ry. Co. v. Kyle, 204 Ala. 597, 600, 87 So. 191, 193.

It is a difficult matter to entirely remove impressions once made upon the jury by the introduction of illegal evidence. Green v. State, 96 Ala. 29, 32, 11 So. 478. As the saying goes, you cannot "unring" a bell.

The evidence here is clearly prejudicial to the landowners, is admittedly not proper for the jury to consider, and was deliberately admitted over objection with the indicated intention to instruct the jury to disregard it. In these circumstances we are not persuaded that giving the instruction requested by the landowner is adequate to eradicate the prejudice arising from the evidence. Neither are we persuaded that we should hold that its admission was harmless error. We hold that its admission was reversible error.

2.

The owners assign for error the action of the court in giving condemnor's requested Charge 4 which recites:

"4. The Court charges the jury that you are not bound to take any man's opinion as to the market value of the property being acquired in this proceeding and you may act on your own judgment and good common sense in arriving at a just value to be awarded this property owner."

The owners argue that Charge 4 " . . . . gave the jurors an improper opinion of their duty, and was highly prejudicial to defendants." To support this argument,

the owners rely on Moore v. Watts, 81 Ala. 261, 2 So. 278; O'Neill v. City of Birmingham, 221 Ala. 580, 130 So. 87; State v. Ingalls, 277 Ala. 562, 173 So.2d 104; and State v. Crawford, 277 Ala. 568, 173 So.2d 109. We will not here set out each of the charges relied on in the cited cases. In O'Neill, this court held that the trial court committed reversible error in giving Charges 55, 56, and G, 221 Ala. 584, 130 So. 87, ¶ [8–10]. The court said:

"There is no 'absolute' nor 'unrestricted' right in the trier of facts to disregard evidence of witnesses thus declared competent, whether expert or not. It is not conclusive as of course, but is to be considered like other evidence in connection with all the facts and circumstances and in the light of the knowledge and experience of the jury in finding the true value. In the giving of charges 55 and 56 and G there was error to reverse." (221 Ala. at 584, 130 So. at 91)

In O'Neill, Charge 56 is typical of the three charges held to be erroneous. Charge 56 recites:

" '56. The Court charges the jury that the opinion of an expert as to the value of the plaintiff's land involved in this suit, is an opinion only, and you may deal with it as you please, giving it credence or not as your own experience or general knowledge of the subject may dictate. Such opinions are mere estimates and are not conclusive on juries even when without conflict.' " (221 Ala. at 581, 130 So. at 88)

Charge 4 in the instant case does not say to the jury, with respect to expert opinion evidence of value, that " ' . . . . you may deal with it as you please . . . . ' "; or as in Charge 55 in O'Neill, " ' . . . . you have the absolute right to entirely disregard the opinion of all the experts who have testified . . . . as to the value of the plaintiff's land, . . . . ' "

Charge 4 in the instant case resembles more closely Charge 54 in O'Neill which recites:

" '54. The Court charges the jury that you are not bound by the opinion of the experts or by apparent weight. of evidence, but you may give your own conclusions.' " (221 Ala. at 581, 130 So. at 88)

This court held in O'Neill that giving Charge 54 was not reversible error, saying:

"Charge 54 is to like effect with a charge sustained in United States v. Goodloe, 204 Ala. 484, 486, 86 So. 546." (221 Ala. at 583, 130 So. at 90)

In Goodloe, a condemnation proceeding, the following charge was given at the request of defendants, the owners, to wit:

" 'I charge you, gentlemen, that you are not bound by the opinion of experts or by the apparent weight of evidence, but you may give your own conclusions.' " (204 Ala. at 485, 86 So. at 547)

As to the quoted charge in Goodloe, this court said:

"Counsel for appellant very strenuously insist there was reversible error in giving the charge at the request of the defendants, to the effect that the jury will not be bound by the opinion of experts, which charge will appear in the report of the case. It is to be noted that the evidence in this case was confined solely to opinion testimony dealing entirely with the valuation of the property, and that it related to a matter as to which the jury are presumed to have some general knowledge. Under the decisions of this court this opinion evidence as to value was not conclusive and binding on the jury. (Citations Omitted) If the plaintiff was of the opinion that the charge might be construed by the jury as authorizing a capricious disregard of all the testimony, and a verdict

rendered upon their personal knowledge or observation, then an explanatory charge should have been requested as a matter of precaution. We do not so construe the charge, however, but entertain the view that if any criticism is to be directed thereto it could only be as to any misleading tendency." (204 Ala. at 486, 86 So. at 547)

Following *O'Neill* and *Goodloe*, we hold that giving Charge 4 in the instant case was not error to reverse, and that, if the owners were of opinion that the charge was misleading, they should have requested an explanatory charge.

### 3.

The owners assign as error the action of the court in overruling the owners' motion to strike the testimony of condemnor's expert witness, Carmichael, with respect to certain sales of other allegedly similar property which had been sold by the Montgomery Housing Authority.

On direct examination the witness had undertaken to describe the manner in which he had arrived at an opinion as to the reasonable market value of the condemned property. On cross-examination, he stated that his opinion as to the value of the condemned property was based principally on sales made by Montgomery Housing Authority and two other sales.[1]

One of the other two sales was a sale by Mr. Dickey to Mr. Land. The lot sold was smaller than the condemned lot, and the sale price was $10,500.00. The Dickey sale indicated to the witness that the condemned lot was worth about $33,000.00.

The witness considered also: a lot sold by the Housing Authority to Mr. Little for $23,300.00; a lot sold by the Housing Authority to the Alabama School Supply for $17,300.00; and a lot sold by the Hous-

ing Authority to W. O. Jones for $15,300.00.

The sale to "Charlie York" apparently is the sale to York Engineering for $12,000.00. The witness mentioned also the sale of a smaller lot to Triangle Electric for $9,100.00.

In the opinion of the witness, the reasonable market value of the condemned lot it $37,500.00 "as of April 2nd, 1965." As stated above, the valuation date was April 22, 1965.

On cross-examination, the witness testified that he had appraised the condemned lot as worth $35,500.00 in 1961. He did not know that Mr. Dickey had some financial difficulties about the time the Dickey lot was sold. The witness was not involved in the Dickey sale and only knows of it by report. His information is not firsthand. The Dickey sale could have been influenced by Mr. Dickey's financial condition at the time it was made.

He testified further that the Housing Authority is "a city corporation"; it "is out to salvage all of its money that it can"; it is financed by "public monies"; "Federal grants basically"; its objective is to go into an area which has been declared "as a slum area," to buy the land there and to clear it and to resell it; "They have restrictions on the land that they sell."

One of the restrictions is that people who buy must show how they intend to use the land and that they will put it to such a use within a stipulated time. If a buyer pays the Authority $17,000.00 for a lot and somebody comes along and offers to buy it for $25,000.00 within six weeks, the buyer, who bought from the Authority, is not at liberty to take it but must go ahead and develop according to their plans; the Authority keeps its finger on the resale to keep speculation out for a limited period.

---

1. Carmichael testified:
    "Q As I understand your testimony, the only comparables that you are using to arrive at your appraised price, your opinion as to the value of this lot, are sales from the Montgomery Housing Authority on the one hand and one sale by Mr. Dickey and one sale to Charlie York?
    "A These are the principal ones, yes."

If a prospective buyer from the Authority showed what he planned to do with the lot, and the Authority did not agree with the buyer's plans, the Authority would not sell to the buyer. The witness testified that in the face of the restrictions and controls he would say such sales were sales between willing buyers and willing sellers.

The witness testified: " . . . . I am sure there are many cases where they (the Authority) sold it (land) for less than they paid for it." (Par. Supplied)

At this point, the owners made their motion to exclude and the court denied the motion as follows:

"Q In fact, the expectation in an Urban Redevelopment Program is that the sale of land will generate approximately twenty per cent of what the land cost the Public Housing Board, isn't it?

"MR. SMITH: We object to this, if the Court please.

"THE COURT: Overrule.

"MR. SMITH: We except.

"THE WITNESS: I am not sure of your twenty per cent figure but I am sure that it is less.

"MR. KING: Substantially less.

"THE WITNESS: Substantially, but not necessarily less than the market value.

"MR. SMITH: We object to the answer and move to exclude each of these answers relative to the question, if the Court please.

"THE COURT: Overrule.

"MR. SMITH: We except.

"MR. KING: Now, Mr. Carmichael, you still insist that these are comparable sales?

"THE WITNESS: Yes, sir. In my opinion, they are.

"MR. KING: And that this is in free market—

"THE WITNESS: In my opinion, they are.

"MR. KING: I move the Court to rule that they are not and to strike the testimony to the contrary.

"THE COURT: The motion is denied."

█ This court has adopted the rule that in cases involving the sale of lands, evidence as to the sales price of other lands which were sold voluntarily is admissible, if the conditions surrounding the two tracts of land are similar and *if the sale was neither too remote* in point of time *nor of such a character as to indicate that it did not represent the true value of the property.* The rule is otherwise as to forced sales. Southern Electric Generating Co. v. Leibacher, 269 Ala. 9, 16, 17, 110 So.2d 308.

In McLemore v. Alabama Power Company, 285 Ala. 20, 228 So.2d 780, on rehearing November 20, 1969, the majority of this court expressed " . . . . the opinion that an expert should be permitted on direct examination to state the sales prices of 'comparable lands' even though his knowledge of such sales prices is obtained from, or is founded upon, hearsay, for the reason that he should be permitted *to show the basis for his opinion of the value of the land in question.*"

In section II of the opinion in *McLemore* on rehearing, this court considered also admissibility of copies of deeds to show the sales price of other lands. The majority of the court say: "We can see no good reason why a party should not be permitted to introduce . . . . certified copies of deeds *solely for the purpose of showing the basis for the opinion of the . . . . expert . . . .* When such evidence is allowed, the other party would be entitled to a limiting instruction to the jury." (Emphasis Supplied)

In State v. Boyd, 271 Ala. 584, 587, 126 So.2d 225, the court said:

" .  .  .  . As noted in the Leibacher case, supra, and Annotation 118 A.L.R. 869, 876, there must be similarity between the tracts, and the sale must be neither too remote in point of time nor of such a character as to indicate that it did not represent the true value of the property; and *it is incumbent on the party offering proof of other sales to show these facts. .  .  .  .* " (Emphasis Supplied)

Two text writers have said:

" .  .  .  . As a general rule, the courts exclude evidence of sales under circumstances that do not conform to their concept of a 'fair market value.' They admit testimony as to prices paid on sales at public auction, where presumably a 'willing buyer' meets a 'willing seller' in open competition. On the other hand, they exclude evidence of forced-sale prices. .  .  .  ." Orgel on Valuation Under Eminent Domain, Vol. 1, § 140, page 592.

"Forced sales usually involve transactions in which there is an element of compulsion either on the part of the seller who is obliged to act with undue haste, thereby affording him an inadequate period in which to effect a reasonable deal, or on the part of the purchaser who for purely personal reasons or necessities is compelled to pay a higher price than an ordinary purchaser would be willing to pay. However, it has been said that there is a presumption, in the technical and proper meaning of that word, that the price of land sold was fixed freely and not under compulsion. In the absence of evidence warranting a finding that a sale is made under such compulsion as to make the price inadmissible as evidence of value, consideration may be given to the sale. It has been said that 'involuntary sales' imply compulsion under a decree, execution or something more than inability to maintain the property. The element of compulsion must be based on legal, not economic, factors. For the purpose of determining admissibility of comparable sales, compulsion is not shown to exist where a person is compelled by force of circumstances to part with property which he might desire to hold. Nevertheless, although it has been recognized that the concept of a forced or compulsive sale includes force or compulsion as a result of some kind of legal process, it has been held that compulsion may also be created by business circumstances." Nichols on Eminent Domain, Revised Third Edition, Vol. 5, § 21.32, pages 461, 462, and 463.

In the absence of evidence as to the character of sales by the Housing Authority, we would presume that such a sale was voluntary in the sense that it had been made in a free market and was not "of such a character as to indicate that it did not represent the true market value of the property .  .  .  ." *Boyd,* supra. In the instant case, however, there is evidence which does affirmatively indicate that sales by the Authority do not reflect the true market value of the property sold. Carmichael did not indicate that he had actual knowledge of the sales by the Authority or what the circumstances of the sales were. He did testify that it, the Authority, is out to "salvage" all its money that it can; that it is financed by federal grants; that it buys land in slum areas and resells it with restrictions as to use and resale; and that there are many cases where the Authority sold for substantially less than it had paid for the land.

The Authority, apparently, does not sell under compulsion of legal process, but the evidence shows that the Authority sells under a business practice which prevents the buyer from using the property as he might otherwise deem more valuable and prevents him from reselling for a stipulated period.

The purpose for which the Authority operates is commendable and may prove of great benefit to the city and its people, but the evidence indicates that the Authority is not, in business practice, that reasonable or prudent seller contemplated in the definition of market price as the price for which a willing seller would sell if he seeks

**330**

financial gain and not social or public benefit.

Evidence of comparable sales is admitted because:

"Such evidence is capable of direct proof; it has considerable probative value. Market value is, of course, the price at which an article sells in the open market. This price is fixed by sales actually consummated. Such sales, *when made under normal and fair conditions,* are necessarily a better test of the market value than the speculative opinions of witnesses; for truly, here is where 'money talks.' . . . ." (Emphasis Supplied) Nichols on Eminent Domain, Revised Third Edition, Vol. 5, § 21–3[1], page 429.

If the condemned land were due to be valued as if sold under the same conditions and restrictions as those under which the Authority sells, then evidence of sales by the Authority would be useful in fixing the value due to the owners, but that is not the case. Neither is such evidence proper to be given by the expert to show the basis for his opinion, because the market approach to valuation is predicated on comparable sales of similar property under conditions which reflect a fair market value and not a restricted market value.

The evidence shows that the price of land sold by the Housing Authority was not fixed freely but was fixed under compulsion; to wit, the compulsion on the Authority to clear slum areas and resell the land subject to restrictions prohibiting uses not consistent with or subservient to the purpose for which the Housing Authority was created, and subject to the further restriction that the buyer from the Authority cannot resell for a stipulated period of time. Such a sale is not a sale made under "normal" conditions. Nichols, supra, Vol. 5, § 21–3[1], page 429. Potential buyers, who would purchase if the use of the land were not restricted, are excluded by the restrictions. A price so fixed does not reflect the fair and reasonable market value of the land, and is not proper to be used as a basis for estimating the fair market value of similar land. The price fixed at such a sale does ". . . . not represent the true value of the property . . . . ." State v. Boyd, supra.

■ Under the holding of this court on rehearing in *McLemore,* the party producing the expert witness is entitled to have the witness state the basis of his opinion by detailing those proper factors which he considered in forming his opinion, but the party is not entitled to have the witness base his opinion on a sale of such a character that it does not represent the true market value of the property sold. Under the evidence in this case, the sales by the Authority do not represent the "true" market value of the property sold (State v. Boyd, supra) and evidence showing the details of those sales should have been excluded.

Overruling the owners' motion to strike was reversible error.

4.

■ The owners assign for error the giving of condemnor's requested Charge 3 which recites:

"3. The Court charges the jury that you cannot consider any sentimental value in your consideration of this case, and you cannot award any sum of money based upon any sentimental value or consideration."

Appellants say that Charge 3 is objectionable because it contains no definition of sentimental value and because it is abstract. Appellants say also that there was no testimony that the condemned property had any sentimental value.

The charge might have been refused without error for the objections pointed out by appellants; see Charge 1 which was considered in State v. Ingalls, 277 Ala. 562, 173 So.2d 104.

The fact, however, that a given charge is abstract is not available as reversible error unless it affirmatively appears from the record that the charge worked injury to the complaining party; such party's remedy being to request an explanatory charge. Bailey v. Tennessee Coal, Iron & R. Co., 261 Ala. 526, 75 So.2d 117.

Consideration of this record does not indicate that giving Charge 3 was so misleading as to be reversible error.

5.

In view of another trial, consideration is pretermitted of the assignment that the court erred in overruling the motion for new trial on the ground that the verdict is inadequate.

Reversed and remanded.

SIMPSON, BLOODWORTH, MADDOX and McCALL, JJ., concur.